The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Monika BLEHM, Defendant-Appellant.

No. 78–733.

Colorado Court of Appeals, Div. II.

Decided July 17, 1980.

Rehearing Denied Aug. 14, 1980.

Certiorari Denied Jan. 5, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Peter R. Bornstein, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant appeals her conviction of conspiracy to commit escape. We affirm.

In January 1978, defendant's husband was confined in the Boulder County Jail awaiting trial on a number of felony charges. On January 15, he attempted to escape from the jail. On January 26, defendant went to the jail to visit her husband. She entered through an electronically operated security door marked "Visitors Entrance." Posted on that door was a sign with three-eighths-inch lettering which read: "NOTICE THIS FACILITY IS EQUIPPED WITH AUDIO AND VISUAL SECURITY SYSTEMS." An identical sign was posted in the booking room through which all prisoners enter the jail.

Defendant met with her husband in a visiting room which was divided into a visitors' side and a prisoners' side. A plexiglass partition extended from floor to ceiling and prevented any physical contact between visitors and prisoners. Defendant conversed with her husband over an intercom system which constituted the only means by which visitors and prisoners could communicate. One wall of the visiting room consisted of large glass windows, and on the other side of the windows was the jail master control room. From the master control room, jail personnel could see the prisoners and their visitors, and could also monitor the conversations being carried on over the intercom system.

Because of defendant's husband's previous escape attempt, the conversation between defendant and her husband was monitored by a sheriff's officer who heard them discuss a plan for the prisoner's escape. The plan involved the active participation of defendant and the use of firearms.

On January 30, 1978, defendant again visited her husband and again their conversation was monitored. As a result of the monitoring, jail officials learned that the

escape attempt would occur later the same day. When defendant left the jail, she was arrested and her car was seized. A search warrant for the car was issued based on the conversations monitored between defendant and her husband. The car was searched, and a number of items, including some marijuana, were seized.

At trial, defendant moved to suppress all evidence related to the monitored conversations. Her motions were denied, and the conversations and items seized were admitted into evidence.

## I.

Defendant's principal contention on appeal relates to the admissibility of the conversations which were monitored by jail officials. It is undisputed that the monitoring was not conducted pursuant to a court order or warrant. Nor was it conducted with the knowledge or consent of either of the parties. Defendant contends, therefore, that the monitoring and subsequent use by the state of the conversations violated her rights under the Fourth Amendment as well as various statutes.

The Fourth Amendment guarantees only against unreasonable searches, and not every search without a warrant is unreasonable. *Larkin v. People*, 177 Colo. 156, 493 P.2d 1 (1972). The test of reasonableness of a search requires balancing the need for the particular search against the invasion of personal rights involved. The elements which must be considered are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979). Also, in the context of this case, for there to be a search and seizure of a conversation which violates the Fourth Amendment, there must have been a justifiable expectation of privacy with respect to that conversation. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The courts have generally recognized the existence of and justification for official surveillance in a prison environment, and that such surveillance does not necessarily violate the Fourth Amendment. *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); *Moore v. People*, 171 Colo. 338, 467 P.2d 50 (1970). This recognition is based on the fact that detention facilities are unique places "fraught with security dangers." *Bell v. Wolfish, supra.*

Additionally, the justification for intrusive prison practices is not dependent upon the status of the individual involved. Among the purposes of official surveillance in a prison environment are the preservation of internal order and discipline and the maintenance of institutional security against escape or unauthorized entry. In this context, no justifiable distinction can be made between one who has been convicted of a criminal act and one who is being detained prior to trial on criminal charges. *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Nor is there necessarily a distinction between those who are detained within a facility and those who enter the facility as visitors, particularly when the purpose for the surveillance is the prevention of escape or unauthorized entry. *See Lanza v. New York, supra.*

In considering the reasonableness of the specific type of intrusion involved in this case, the monitoring of conversations, we must apply the test established in *Katz v. United States, supra*, and determine whether defendant had a justifiable expectation that her conversation with her husband was private. This test has previously been applied in Colorado in situations involving detention facilities.

In *People v. Gallegos*, 179 Colo. 211, 499 P.2d 315 (1972), it was determined that a prisoner's constitutional rights were not violated by the use of comments he made while talking on a telephone when he voluntarily made those comments knowing of the imminent presence of a jail official.

In contrast, this court determined in *People v. Harfmann*, 38 Colo.App. 19, 555 P.2d

187 (1976), that prison officials created a justifiable expectation of privacy in a prisoner and his attorney when the two were escorted to an apparently secure room and were left alone in that room. As a result, the evidence obtained as a result of the ensuing covert surveillance of the prisoner and his attorney was held to be inadmissible against the attorney relative to charges concerning the introduction of narcotic drugs into the jail. Similarly, the California Supreme Court applied the same test in *North v. Superior Court,* 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155 (1972), in determining that the recorded conversation between a prisoner and his wife should have been suppressed as the product of an unreasonable search and seizure. There, it was held that, as in *Harfmann,* by escorting the prisoner and his guest to an apparently private office, and by leaving them alone in the room, the jail officials created a justifiable expectation that the conversations between the parties were private.

In a situation almost identical to the one presented in this case, however, both the California Court of Appeals and the California Supreme Court found no violation of the Fourth Amendment. *People v. Hill,* 107 Cal.Rptr. 791 (1973), *rev'd on other grounds,* 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974). There, the California Court of Appeals considered the admissibility of a conversation between a prisoner and his wife which was recorded while the two conversed in the regular visiting area of the jail, separated by a plate glass partition. The court approved the admission of the evidence, stating that under these circumstances the parties had no justifiable expectation of privacy. Although it reversed the Court of Appeals on other grounds, the California Supreme Court referred to its opinion in *North v. Superior Court, supra,* and stated that: "It was the police officer's deliberate attempt to *create* an expectation of privacy which led the majority in that case to conclude that the expectations of the Norths were reasonable ... Absent such unusual circumstances, spouses can have no reasonable expectation that their jailhouse conversations will be private." The court then concluded that the conversation in *People v. Hill, supra,* was properly monitored and recorded and therefore was properly received into evidence.

■ We find persuasive the language of the California courts in *People v. Hill, supra,* as well as the comments of the California Court of Appeals in *DeLancie v. Superior Court,* 97 Cal.App.3d 519, 159 Cal.Rptr. 20, 25 (1979), that "no right of privacy is extended to ordinary jail conversations precluding secret monitoring and probative use under the protective shield of" the Fourth Amendment.

■ We rule, therefore, that under the circumstances of this case, defendant had no justifiable expectation that her conversations with her husband were private. As a result, we find that the intrusion by jail officials, which was for the purpose of preventing escape, did not violate defendant's rights under the Fourth Amendment.

## II.

Defendant also contends that the conversations should not have been admitted into evidence because the monitoring of those conversations violated various federal and state statutes. We disagree.

■ In her reply brief on appeal, defendant referred to but did not discuss the applicability of 18 U.S.C. § 2510 et seq. (The Omnibus Crime Control and Safe Streets Act of 1968). That statute regulates the interception of wire and oral communications, which are defined as follows:

"(1) 'wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;

"(2) 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

The conversations between defendant and her husband were outside the scope of this statute because (1) the conversations were not made through the use of facilities furnished or operated by a common carrier and therefore did not constitute wire communication; and (2) as stated above, there was no justifiable expectation that the conversations were private, and therefore, they did not constitute oral communication as defined by the statute. *People v. Santos*, 26 Cal.App.3d 397, 102 Cal.Rptr. 678 (1972). *See also, People v. Morgan*, 197 Cal.App.2d 90, 16 Cal.Rptr. 838, *cert. denied*, 370 U.S. 965, 82 S.Ct. 1606, 8 L.Ed.2d 830 (1962).

■ Among the Colorado statutes proposed by defendant as a basis for the exclusion of evidence relating to the conversations is § 18–9–305, C.R.S. 1973 (1978 Repl. Vol. 8). That statute, which deals with exceptions to offenses involving communications, states in part:

"This section shall not be construed in any manner which would allow an investigative or law enforcement officer of the state of Colorado to engage in any wiretapping or eavesdropping without prior authorization by a court of competent jurisdiction under the provisions of article 15 of title 16, C.R.S. 1973."

Section 18–9–305(4), C.R.S. 1973 (1978 Repl. Vol. 8).

In order to determine the validity of defendant's contention that the monitoring of her conversation was precluded by § 18–9–305(4), C.R.S. 1973 (1978 Repl. Vol. 8), because it was not done with prior court authorization, it is necessary to determine if the monitoring which was conducted in this case can be considered either wire tapping or eavesdropping as defined by the Colorado statutes. In general, under § 18–9–303, C.R.S. 1973 (1978 Repl. Vol. 8), the offense of wiretapping is committed by "[a]ny person not a sender or intended receiver of a telephone or telegraph communication" who overhears, copies, or uses such a communication.

And, under § 18–9–304(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), the offense of eavesdropping is committed by "[a]ny person not visibly present during a conversation or discussion . . . [who] knowingly overhears or records such conversation or discussion without the consent of at least one of the principal parties thereto, or attempts to do so . . ."

Hence, the type of communication covered by the wiretapping definition is "telephone or telegraph communication," and the type of communication covered by the eavesdropping definition is "conversation or discussion." None of these terms is defined in the statutory sections listing definitions applicable to the statutes concerning offenses involving communications and wiretapping and eavesdropping, §§ 16–15–101 and 18–9–301, C.R.S. 1973 (1978 Repl. Vol. 8). These definition sections do contain definitions of "oral communication" and "wire communication," however, with the definitions being essentially the same as the ones contained in the Omnibus Crime Control Act.

Additionally, our determination of whether the monitoring which occurred in this case constituted eavesdropping or wiretapping for the purposes of these statutes is aided by the language of the statutory provisions relating to the exclusion of communications which have been unlawfully intercepted. Both statutory provisions, §§ 16–15–102(9) and (10), C.R.S. 1973 (1978 Repl. Vol. 8), provide for the exclusion of only unlawfully intercepted "wire or oral communication."

Conforming to the principle of statutory construction that in order to determine the meanings of words used in a statute, the courts must look to the relevant statutes as a whole, *Board of County Commissioners v. Denver*, 194 Colo. 252, 571 P.2d 1094 (1977), we rule that the terms "telephone or telegraph communication" in § 18–9–303, C.R.S. 1973 (1978 Repl. Vol. 8), are synonymous with "wire communication" as

defined in § 18–9–301(9), C.R.S. 1973 (1978 Repl. Vol. 8); and that the terms "conversation or discussion" in § 18–9–304, C.R.S. 1973 (1978 Repl. Vol. 8), are synonymous with the term "oral communication" as defined in § 18–9–301(8), C.R.S. 1973 (1978 Repl. Vol. 8).

As discussed above with respect to the Omnibus Crime Control Act, defendant's conversations were not within the statutory definition of a "wire communication" because they did not involve the facilities of a common carrier, and they were not within the statutory definition of an "oral communication" because there was no justifiable expectation of privacy. *People v. Santos, supra; see also, People v. Morgan, supra.* As a result, the monitoring which occurred in this case was not proscribed by the provisions of § 18–9–305(4), C.R.S. 1973 (1978 Repl. Vol. 8).

■ For the same reasons, we find no merit in defendant's contention that her conversations were privileged because they were between husband and wife, and therefore, were protected by the provisions of § 16–15–102(15), C.R.S. 1973 (1978 Repl. Vol. 8), which states:

"No otherwise privileged *wire or oral communication* intercepted in accordance with, or in violation of, the provisions of this section shall lose its privileged character." (emphasis added)

■ Defendant also contends that the use of the monitored conversations constituted a violation of § 13–90–107(1)(a), C.R.S. 1973, which states:

"A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor during the marriage or afterwards shall either be examined without the consent of the other as to any communications made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other nor to a criminal action or proceeding for a crime committed by one against the other."

This statute prohibits only the husband or the wife from testifying. Here, the testimony in question was given by an agent of the state who, as we have here determined, lawfully monitored the conversation.

■ Having found no error in the trial court's admission of the evidence relating to the conversations between defendant and her husband, we likewise find no error in the admission of the fruits of the search of defendant's car because that search was conducted pursuant to a warrant based on information gleaned from the monitored conversations.

### III.

Defendant next contends that the trial court erred in allowing the state to present evidence that during her conversation with her husband, defendant was asked to obtain some cocaine—part of which would be sold after the escape in order to get money, and part of which would be used by defendant and her husband. Defendant also objected to the introduction into evidence of a bag allegedly containing marijuana which was seized during the search of her car. Defendant contends that this evidence was unrelated to the crime charged and could only serve to inflame the passions of the jury against her.

■ Evidence is not inadmissible on the grounds that it tends to prove an unrelated crime when it is also part of the same occurrence which gave rise to the offense on trial. *People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1977). Here, the procurement and possession of drugs by defendant was a part of the planned escape and therefore, we find no error by the trial court in allowing the admission of this evidence.

### IV.

■ Defendant's final contention of error on appeal relates to the late endorsement of two prosecution witnesses. The late endorsement of witnesses constitutes reversible error only where the defendant shows that he was prejudiced by the late endorsement and where the defendant makes a timely request for continuance and

that request is denied by the trial court. *People v. Bailey*, 191 Colo. 366, 552 P.2d 1014 (1976). Here, defendant has shown no such prejudice. Additionally, the record shows that defendant was offered a continuance by the trial court; however, she declined to avail herself of this offer. As a result, we find no reversible error.

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.