**The PEOPLE of the State of
Colorado, Petitioner,**

v.

**Janice K. TAUBE, Respondent.**

**No. 92SC548.**

Supreme Court of Colorado,
En Banc.

Dec. 13, 1993.

---

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Wendy J. Ritz, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

David F. Vela, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in this case to decide whether law enforcement officers may conduct an inventory of a home seized pursuant to a temporary restraining order (TRO) issued under the Abatement of Public Nuisance Act, sections 16–13–301 to –316, 8A C.R.S. (1986 & 1992 Supp.) (the Nuisance Act). The People challenge the court of appeals' decision in *People v. Taube*, 843 P.2d 79 (Colo.App.1992) (*Taube I*), that the seizure of property pursuant to the Nuisance Act did not authorize a warrantless entry by the police into the defendant's home to inventory its contents. The People also contend that the court of appeals erred in holding that the "inventory search" exception to the Fourth Amendment's warrant requirement does not apply to searches of a person's home. For the reasons stated below, we affirm.

I

Janice K. Taube (the defendant) was one of several targets of an investigation by the South Metro Task Force (the police) into an alleged network of cocaine dealing and trading cocaine for stolen property. During the course of the investigation, a confidential informant reported to the police that the defendant had arranged drug transactions over the telephone from her home. The investigation produced no evidence, however, indicating that drugs or other evidence of criminal activity was present in the defendant's home or that any drug transactions occurred there.[1]

Based on the informant's statement, the police obtained and executed search warrants for non-published subscriber information from U.S. West and a pen register on the defendant's home telephone number.

The police then monitored the telephone activity originating from the defendant's home over a period of approximately three weeks. Based on the informant's statement and the fact that several phone calls were made from the defendant's home to a person allegedly involved in a cocaine transaction seven years earlier, the district attorney initiated a civil suit for abatement of the defendant's home and its contents as a class one public nuisance pursuant to section 16–13–303, 8A C.R.S. (1986 & 1992 Supp.). In that action, the district attorney filed a motion for a TRO requesting the trial court to: (1) prohibit the defendant from transferring, damaging, or destroying the house or its contents; (2) order the sheriff to seize and padlock the home and keep it under his care, custody and control; and (3) order that the seizing agent may take an inventory of the seized premises by photograph and/or video. The district attorney's motion specifically referred to the "defendant real property" as the instrumentality of the cocaine and stolen property scheme.

At the *ex parte* hearing to obtain the TRO, the deputy district attorney informed the trial court that the People were not attempting to obtain a warrant to search the defendant's home at that time because they "didn't have sufficient recent information" for probable cause to believe that either controlled substances or stolen property could be found inside the house. Recognizing the possibility that the defendant would later challenge a warrantless entry into the home,[2] the trial court decided

1. In his affidavit to support the TRO, Englewood Police Officer Dan Johnson alleged that drug transactions were arranged by the defendant from her home telephone but transpired in a bank parking lot in Arapahoe County.

2. Noting that the district attorney did not intend to seek a search warrant until after execution of the TRO, the trial court stated that:
   [i]t may well be that an issue will arise, if you proceed the way you intend to proceed, as to

whether your entry into this home and your seizing of any items you find is or is not inadvertent for purposes of plain view seizure. If I enter an order directing you to do so, that might be a factor that some future court would take into consideration if there is an issue about whether any seizure is or is not inadvertent and is or is not therefore a legitimate plain view seizure....

to grant the TRO, conditional upon striking two paragraphs from the district attorney's proposed order. The key passage stricken from the order reads as follows:

It is further ordered that the seizing agency or its agents may take an inventory of the seized premises by still photograph and/or by video.

The trial court explained that by striking this language:

[I] am not prohibiting you from doing what you think you ought to do, I'm simply not going to make it an order of this Court.... I am not prohibiting you from entering the premises. I am not authorizing you to enter those premises. That is a judgment which you will make, and the consequences of your judgment will be yours to live with.... I just don't want my decision here to have any effect on any future reviewing authority should there be a future reviewing authority. I don't want anybody to suggest that the reason that you went into the house was because I ordered you to.

The trial court concluded its remarks at the TRO hearing by stating that the decision whether the police should conduct an inventory search of the home was "an executive decision, not a judicial decision, at this stage of the game."

Ten police officers went to the defendant's home to execute the TRO. Despite the trial court's obvious concern as to the propriety of a warrantless entry, the officers conducted an extensive, room-by-room search of the contents of the house. The officers eventually found a safe on the floor of the master bedroom closet. The door to the safe was open approximately one-half to one inch, and when an officer opened the door farther, he found plastic bags containing cocaine and envelopes containing money. The police also opened and inspected the contents of the drawers in a makeup table in the master bedroom.[3] In one drawer, a bag of cocaine, scales and a spoon were found underneath a towel. The officers laid these items out in an open area and made a photographic and video recording of them.[4] The "inventory" was terminated at that point.

Later that day, the officers obtained a warrant to search the house and returned to seize the previously discovered contraband. The defendant was then charged with possession of cocaine.

Prior to trial, the defendant moved to suppress the evidence seized in her home. Her written motion challenged the search and seizure as illegal because it was conducted without (1) a valid search warrant, (2) probable cause, or (3) authorization under the TRO.[5] At the motions hearing, the defendant further contended that the officers used the TRO as a means by which to circumvent the Fourth Amendment's warrant requirement.[6] The trial court, with a different judge presiding, denied the mo-

---

3. Although the People stated at oral argument that the makeup table drawers were not searched at the time the TRO was executed, but rather were searched during a subsequent entry and pursuant to a search warrant, the district attorney admitted and the trial court found that all of the evidence in dispute was first discovered and seized during the initial entry.

4. In her Supplement to Motion to Suppress Evidence, the defendant argued that, in light of her knowledge of "the arrangement of the interior of the residence," the video recording "was only secondarily calculated to provide an inventory." She further argued that "the videotape contains scenes which were obviously staged to mislead the viewer and that various items of evidence had been moved and arranged." The People did not offer the videotape into evidence, and it is not part of the record before us.

5. The defendant did not challenge, however, the trial court's finding that probable cause existed to believe that the defendant's residence was a class one public nuisance pursuant to section 16–13–303.

6. Specifically, counsel for the defendant argued that:

[i]t's clear that [the officers] intended to utilize this [TRO] as a method to search, because they didn't have probable cause to get a regular search warrant. This was an ideal vehicle ... because in inventorying they believed they would certainly come upon items that they would believe to be evidence ... but, lacking the probable cause, because of staleness or for other reasons, this became the sole method by which they could get into the house and conduct the search that they intended to do, and certainly did do.

tion based on its finding that a forfeiture proceeding under the Nuisance Act is a civil and not a criminal matter and that "the same rules do not apply to a restraining order that would apply to a search warrant."[7]

At the conclusion of a two-day trial, the jury found the defendant guilty of possession of cocaine. The trial court then sentenced the defendant to a fifteen-year term of incarceration.

The court of appeals reversed the conviction and remanded the case for a new trial, holding that the warrantless entry "was an unreasonable intrusion and violated the Fourth Amendment," regardless of the fact that the TRO proceeding was civil and not criminal in nature. *Taube I*, 843 P.2d at 84–85. The court of appeals further held that the warrant subsequently issued on the basis of discoveries made during the entry was invalid and that the fruits of that warrant were inadmissible against the defendant. *Id.* at 85.

The People first contend that the Nuisance Act and the TRO permitted the officers' entry and comprehensive inspection of the defendant's home. The People further assert that the warrantless search was reasonable under the circumstances and within the scope of the "inventory search" exception to the warrant requirement. We will address each of these arguments in turn.

## II

The Nuisance Act provides that "[a]ll fixtures and contents of any building, structure, vehicle, or real property which is a class 1 public nuisance under [section 16–13–303(1) ] ... are subject to seizure, con-

fiscation, and forfeiture as provided in this part 3." § 16–13–303(2), 8A C.R.S. (1986 & 1993 Supp.). Section 16–13–308(1)(a) further states that:

> If probable cause for the existence of a class 1 public nuisance[8] is shown to the court by means of a complaint supported by an affidavit, the court shall issue a temporary restraining order to abate and prevent the continuance or recurrence of the nuisance.... Such temporary restraining order shall:
>
> (I) Direct the sheriff or a peace officer to seize and, where applicable, close the public nuisance and keep the same effectually closed against its use for any purpose until further order of the court;
>
> (II) Direct the seizure or holding, if previously seized, of all personal property subject to the provisions of this part 3; and
>
> (III) Restrain and enjoin persons from selling, transferring, encumbering, damaging, destroying, or using as security for a bond any property subject to this part 3.

The trial court also "may order that all fixtures and contents of a public nuisance be stored on the premises of such public nuisance...." § 16–13–308(1)(c).

Finally, the Nuisance Act provides that any personal property subject to seizure may be seized:

> (a) Pursuant to any writ, order or injunction issued under the provisions of this part 3; or
>
> (b) Under the authority of a search warrant; or
>
> (c) By any peace officer ... with probable cause to believe that such property is

---

**7.** The People do not contend that the search and seizure can be upheld on these grounds.

**8.** The People relied upon the following provisions of the Nuisance Act in their request for a TRO against the defendant's residence:

> 16–13–303. **Class 1 public nuisance.** (1) Every building or part of a building including the ground upon which it is situate and all fixtures and contents thereof, every vehicle, and any real property shall be deemed a class 1 public nuisance when:

> (c)(I) Used for unlawful ... production, processing, sale, or distribution or for storage or possession for any unlawful manufacture, sale, or distribution of any controlled substance, as defined in section 18–18–102(5), C.R.S....;
>
> ....
>
> (e)(1) Used as a place where the commission of felony theft by receiving, as specified in section 18–4–410, C.R.S., occurs or as a place where misdemeanor theft by receiving ... repeatedly occurs....
>
> § 16–13–303(1), 8A C.R.S. (1986 & 1993 Supp.).

a public nuisance ... if the seizure is incident to a lawful search or arrest. § 16–13–315(1), 8A C.R.S. (1986 & 1993 Supp.).

The People first argue that the language of the TRO, when read in conjunction with the provisions of the Nuisance Act, impliedly authorized the officers' original entry and search of the defendant's home. We disagree.

■ We note at the outset that the search conducted in this case was not authorized by the plain language of subsections (a), (b) or (c) of section 16–13–315. First, looking at subsection (a), the trial court specifically stated in issuing the TRO that it was not authorizing the officers to enter the defendant's home. The fact that the TRO restrained the defendant from "selling, encumbering, transferring, damaging, mortgaging, or in any manner disposing of or destroying" the contents of her home does not amount to an order authorizing the police to enter and search for evidence. *See People v. Bossert*, 722 P.2d 998, 1006–07 (Colo.1986) (finding police officers were legitimately on the defendant's property pursuant to TRO where trial court had expressly ordered an inventory of personal property which it found to have been used in conducting a public nuisance); *United States v. Ladson*, 774 F.2d 436, 439 (11th Cir.1985) (finding inventory of home seized pursuant to federal forfeiture statute invalid where court order only authorized seizure of "real estate" and not contents of home). Second, subsection (b) does not apply because it is undisputed that the police failed to procure a search warrant prior to the entry due to the fact that the prosecution could not show probable cause to believe that contraband or evidence of criminal activity could be found within the home. Finally, subsection (c) is not met because the People cite no factual or legal support for the proposition that the alleged "inventory" was conducted "inci-

dent to a lawful search or arrest." [9] § 16–13–315(1)(c), 8A C.R.S. (1986 & 1993 Supp.). Thus, none of the subsections is satisfied.

■ The People argue, however, that even if the Nuisance Act provisions did not directly authorize the inventory search, the trial court's finding of probable cause to seize the defendant's home as a class one public nuisance made the officers' entry and search "reasonable" for purposes of the Fourth Amendment. Once again, we disagree.

■ The trial court's determination that probable cause existed to believe the "defendant real property" constituted a public nuisance did not amount to a finding that probable cause existed to enter and search the contents of the house in this case. Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Quintana*, 785 P.2d 934, 937 (Colo.1990). Although some courts have held that a finding of probable cause to seize a building under the federal civil forfeiture statute is a relevant factor in determining whether probable cause exists to enter and search the property, *e.g., United States v. 5100 Whitaker Ave.*, 727 F.Supp. 920, 924 (E.D.Pa.1989); *United States v. 2401 S. Claremont*, 724 F.Supp. 668, 669–70 (W.D.Mo.1989), that factor alone is not dispositive. *Id.* at 669–70 (noting the significance of the fact that the court authorized the inventory search *ex ante*).

In this case, the district attorney at the TRO hearing specifically conceded that no probable cause existed at that time to search the home for drugs or other evidence of criminal activity. Moreover, Officer Johnson's affidavit supporting the TRO merely alleged that the defendant used her

---

**9.** The People argue that the officers' execution of the TRO in effect "arrested" or "impounded" the real property and its contents, thereby entitling them to "inventory the property seized and inspect for dangerous conditions or safety concerns." We need not address the validity of such a proposition as a legal matter, however, because the People concede that the record contains no evidence that the police in fact limited their entry and search to securing the property against potentially hazardous conditions.

telephone to arrange drug transactions in another county. Although Officer Johnson noted that, in his experience, drug traffickers frequently keep records of drug transactions, including relevant telephone numbers, he did not state that such records could be found in the defendant's home. Nor did the affidavit indicate that the defendant's residence contained any of the drugs or stolen property allegedly involved in the illegal scheme.[10] Therefore, the People's argument that probable cause impliedly existed to conduct the warrantless entry and search, thereby making the search reasonable under the circumstances, is without merit.

We must now address the People's alternative argument, that the entry and inspection of the contents of the defendant's residence fall within the "inventory search" exception to the warrant requirement.

### III

■ A warrantless search conducted by the police is *per se* unreasonable in violation of the Fourth Amendment, unless it satisfies one of "a few specifically established and well-delineated exceptions." *People v. Wright*, 804 P.2d 866, 869 (Colo. 1991) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978)); *People v. Thiret*, 685 P.2d 193, 200–01 (Colo.1984). The scope of any such exception .must be "strictly circumscribed by a real exigency justifying the initiation of a warrantless intrusion, and the burden is upon the prosecution to establish that any such intrusion was necessary under the circumstances of a particular case." *Wright*, 804 P.2d at 869; *People v. Dandrea*, 736 P.2d 1211, 1216 (Colo.1987).

■ The Fourth Amendment specifically prohibits warrantless and non-consensual entries into a person's home to search for contraband unless probable cause and

"exigent circumstances" necessitating immediate police action are shown to exist. *Payton v. New York*, 445 U.S. 573, 587–89, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639 (1980); *Michigan v. Tyler*, 436 U.S. 499, 509–12, 98 S.Ct. 1942, 1949–51, 56 L.Ed.2d 486 (1978); *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972) (remarking that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967) (holding that except in certain carefully defined classes of cases, where the circumstances are such that the burden of obtaining a warrant is likely to frustrate the governmental purposes behind the search, a search of private property cannot be conducted without a warrant); *People v. Jansen*, 713 P.2d 907, 911 (Colo.1986) ("A warrantless search [is] per se unreasonable ... especially where there is a[n] ... intrusion into a home."); *McCall v. People*, 623 P.2d 397, 401–02 (Colo.1981). The existence of probable cause and exigent circumstances must be determined by evaluating the facts available "at the time of the warrantless entry and search." *Jansen*, 713 P.2d at 911.

■ In the case before us, the officers had no warrant entitling them to search for the evidence discovered during the original entry of the defendant's home. The evidence eventually was seized pursuant to a warrant based on the discoveries made during the initial warrantless entry and search. Application of the exclusionary rule and the "fruit of the poisonous tree" doctrine requires us to affirm the court of appeals' decision to suppress the evidence unless the original search falls within an exception to the warrant requirement. *Id.* at 912; *Ladson*, 774 F.2d at 439. The People contend that the original entry and

---

10. As the deputy public defender correctly noted at oral argument, Officer Johnson's affidavit in support of the TRO did not establish that the cocaine sold to him had been transported from the defendant's residence to the place where the transactions occurred. In fact, the only time the defendant was followed from her home to a

drug transaction, the defendant made a stop at another location (purportedly to drop off her daughter with a babysitter) prior to arriving at the scene of the transaction. Thus, no direct link between the cocaine and the defendant's residence was ever shown.

search of the defendant's home fall under the "inventory search" exception.[11] We disagree.

In some circumstances, a limited inventory search may be conducted without judicial authorization or a finding of probable cause. *See, e.g., Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (permitting warrantless inventory search of automobile upon lawful arrest); *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (holding that arrestee's person may be searched at the police station and the discovered items inventoried without warrant or probable cause); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (upholding inventory search of glove compartment of impounded vehicle). "[I]nventory searches serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741; *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097. An inventory search may not, however, be used "as a ruse for a general rummaging [by the police] in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). The determination of whether an inventory search or a broad evidentiary search occurred is a question of fact under the circumstances of the particular case. *United States v. United States Currency in the Amount of $324,225.00*, 726 F.Supp. 259, 261 (W.D.Mo.1989).

An important requirement of the inventory search exception is that police discretion in executing the search be guided by standardized criteria or procedures. *Wells*, 495 U.S. at 3–4, 110 S.Ct. at 1634–35; *Bertine*, 479 U.S. at 375, 107 S.Ct. at 743; *Opperman*, 428 U.S. at 372, 376, 96 S.Ct. at 3098, 3100. "The policy or practice governing inventory searches should be designed to produce an inventory," and should not permit the unfettered discretion of the officers in the field to

dictate the extent and scope of the search. *Wells*, 495 U.S. at 4, 110 S.Ct. at 1635.

In light of the "traditionally drawn [ ] distinction between automobiles and homes or offices in relation to the Fourth Amendment," *Opperman*, 428 U.S. at 367, 96 S.Ct. at 3096, courts generally have been reluctant to extend the application of the inventory search exception to intrusions into private residences. *See, e.g., United States v. Showalter*, 858 F.2d 149, 153 (3d Cir.1988) (questioning whether a court may authorize a search of a seized home without a showing of probable cause); *Ladson*, 774 F.2d at 440 (holding that "exigent circumstances" is the only warrant exception for searches of private homes and refusing to use inventory search exception "as a bootstrap to undermine the Fourth Amendment protections afforded the sanctity of the home" where police inventoried home seized under forfeiture statute); *United States v. Parr*, 716 F.2d 796, 813–14 (11th Cir.1983) (same); *5100 Whitaker Ave.*, 727 F.Supp. at 922 (requiring warrant on probable cause to conduct inventory search of residence seized pursuant to federal civil forfeiture statute); *but see United States Currency*, 726 F.Supp. at 261 (permitting a limited inventory search of seized real property and fixtures where court authorization obtained prior to entry); *2401 S. Claremont*, 724 F.Supp. at 669–70 (same).

We need not determine in this case, however, the circumstances under which the state may conduct a limited warrantless inventory search of a home seized pursuant to the Nuisance Act. As a factual matter, the officers' extensive search of the defendant's home cannot be characterized as an "inventory" for purposes of that exception.

The record reveals that ten officers converged upon the defendant's home and conducted a thorough, room-by-room search for evidence. Although the People did not enter the videotape of the incident into evidence, it is apparent from the testimony of the officers involved that the inspection

---

**11.** The People do not argue in this case that "exigent circumstances" necessitated an immediate, warrantless entry by the officers into the defendant's home.

can hardly be characterized as a mere "walk-through" designed to protect the police from potentially dangerous conditions. None of the evidence discovered during the original search was found in plain view, and the officers had to search through closed drawers and closets to find it. There is no evidence in the record, moreover, that any "inventory" of the contents of the home was actually compiled during the search which would have served to protect the police from later claims of lost or stolen property. In fact, the police admitted to the trial court that the search was terminated immediately upon the discovery of the incriminating evidence. Therefore, those factors which would support the application of the inventory search exception are absent in this case. *See Bertine*, 479 U.S. at 372, 107 S.Ct. at 741; *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097.

The People also failed to present any evidence that the search was limited by standardized criteria. Consequently, we can only presume that the size and scope of the search were left to the "unfettered discretion" of the officers involved. *Showalter*, 858 F.2d at 154. "This is precisely the discretion ... we have consistently circumscribed by a requirement that a disinterested party warrant the need to search." *Camara*, 387 U.S. at 532–33, 87 S.Ct. at 1733; *see also Wells*, 495 U.S. at 4, 110 S.Ct. at 1635 ("The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' ").

The record simply does not support the People's view that the officers' conduct in this case constituted a limited inventory search. To conclude otherwise would permit the police to use the limited inventory search exception as a "bootstrap to undermine the Fourth Amendment protections afforded the sanctity of the home." *Parr*, 716 F.2d at 814.

The People argue alternatively that the evidence is admissible under the "plain view" exception to the Fourth Amendment's warrant requirement. The plain view exception only applies, however, where three conditions are shown to exist: (1) a prior valid intrusion; (2) an inadvertent discovery of the evidence; and (3) a reasonable belief by the officers that the evidence is incriminating. *People v. Stoppel*, 637 P.2d 384, 389–90 (Colo.1981). In this case, the evidence was discovered and photographed during the initial warrantless entry and search of the defendant's home. Because we conclude that this original entry was unlawful, we agree with the court of appeals that the plain view exception is inapplicable in this case.

## IV

In summary, we reject the People's view that the entry and search of the defendant's home were authorized by a combination of the Nuisance Act provisions, the TRO and the circumstances surrounding the intrusion. We further reject the People's contention that the original search by the officers falls within the "inventory search" exception to the Fourth Amendment's warrant requirement. The record clearly indicates that, as a factual matter, the extensive room-by-room inspection conducted by the officers went well beyond the scope of a limited inventory search. Therefore, the search warrant obtained on the basis of discoveries made during the initial entry was invalid, and the evidence in question is inadmissible under the fruit of the poisonous tree doctrine. *Jansen*, 713 P.2d at 912. Accordingly, we affirm the judgment of the court of appeals.