The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Eugene Selso SALAZ, Defendant–
Appellee.

No. 97SA363.

Supreme Court of Colorado,
En Banc.

Jan. 26, 1998.

Sarah F. Law, District Attorney, Sixth Judicial District, Craig Westberg, Assistant District Attorney, Durango, for Plaintiff–Appellant.

David F. Vela, State Public Defender, Frank Viehmann, Deputy State Public Defender, Durango, for Defendant–Appellee.

Justice SCOTT delivered the Opinion of the Court.

This interlocutory appeal [1] requires us to decide whether jailers may conduct a second search of an inmate's clothes without a warrant when they learn that an initial inventory search may have failed to uncover contraband hidden in the clothing. We hold that a warrantless search under these circumstances is reasonable and reverse the order of the trial court.

I.

For our statement of the facts, we rely upon the reporter's transcript of the suppression hearings held August 13 and September 25, 1997, as well as the trial court's ruling and minute orders.

Shortly after 4:00 a.m. on March 8, 1997, Eugene Selso Salaz was arrested when Du-

---

1. We accept jurisdiction over this appeal pursuant to section 16–12–102(2) and C.A.R. 4.1. Under these provisions, the People may file an interlocutory appeal in this court from a ruling of a trial court granting a motion made in advance of trial by the defendant to suppress evidence provided that such appeal is not taken for purposes of delay.

rango police discovered a small amount of cocaine in his car during an investigatory stop.[2] After his arrest, Salaz was transported to the Durango Police Department, where he was interviewed. Salaz then was taken to the La Plata County Jail.

At the jail, Salaz and his belongings, including the shoes and the clothes he was wearing at the time of his arrest, were searched pursuant to the jail's written rules and regulations, including inventory procedures. According to these standardized procedures,[3] Salaz was subjected to a search of his person, including a body cavity search. All of his belongings were taken from him and his shoes and other clothes were searched for weapons and contraband, including drugs. Afterwards, he was given jail clothes and required to redress. During the search, all of Salaz's property was inventoried and a computerized record of the inventory was created. He was then required to sign a form indicating that the inventory record was accurate.

Salaz's belongings, including his clothing, were placed in one of more than fifty unlocked lockers used for keeping inmate property, located in a secure property room. The jail's property room is not accessible to inmates, but limited access is available to jail employees, detention specialists, and deputies.

Later the same day, another inmate told a jailer that Salaz had said he had hidden drugs in his shoes, and that these drugs apparently had not been discovered during the inventory search.[4] Based on this tip, the jailer went to the property room and searched Salaz's shoes, where he found the

cocaine which was later suppressed by the trial court's order, and which is the subject of this appeal. The county sheriff's office began its own investigation of the cocaine seized from Salaz's shoes. An investigator interviewed Salaz about the drugs found in his shoes, and Salaz made certain incriminating statements.

At the suppression hearing, a jail supervisor testified as to the jail's written standardized booking procedures, including the requirement that upon release through the "booking-out process" an inmate is given all of his property and is required to dress in his or her street clothes. After dressing, former inmates must sign a form indicating that the property inventoried upon arrival has been returned.

Both the cocaine and the statements were suppressed by the trial court on the theory that they represented the fruit of an illegal warrantless search of Salaz's belongings. The issue before us is whether the Fourth Amendment prohibits the state from using the evidence obtained as a result of the second search which was based on the inmate tip and conducted without a warrant.[5]

## II.

In *Hudson v. People*, 196 Colo. 211, 585 P.2d 580 (1978), under facts quite similar to this case, we held that a warrant was not required to conduct a second search of an inmate's clothing where the inmate had told a fellow prisoner that jailers had failed to find drugs hidden in the clothing during an initial inventory search. We noted that the

---

**2.** The trial court's rulings with regard to the legality of the stop, arrest, and vehicle search are not before us.

**3.** While the exact date and time that Salaz was processed into the La Plata County Jail is unclear, for purposes of this proceeding we conclude from the record that he was stopped by the arresting officers at "a little bit after 4:00 a.m. on March 8" and was taken to the jail shortly thereafter.

**4.** The record does not indicate when the jailer received the tip; however, unrefuted evidence indicates it occurred within a few hours of Salaz's booking.

**5.** As framed by the People, the issues are:

1. Does a person who is in detention at a County Facility for investigation of a felony offense have an expectation of privacy in clothing and personal effects which he wore at the time of his arrest while those items are being kept at such a facility?
2. If so, does this expectation of privacy require the issuance of a search warrant or other legal process before searching such clothing and personal effects when police have information amounting to probable cause that there is contraband hidden therein?
3. What quantum of evidence by jail personnel that contraband is contained in a prisoner's personal effects will, if at all, justify a warrantless intrusion?

room where the clothing was kept could not be locked and acknowledged that the jailer's concern and motivation was "that of preserving order and security in places of incarceration." *Id.* at 212, 585 P.2d at 581–82. We held, "where jail conditions were such that there was a real possibility that someone could gain access ... to drugs, there was a sufficiently immediate threat to jail order and security to justify a warrantless search." *Id.* at 214–15, 585 P.2d at 582. We are now obliged to analyze whether the factual distinction presented in this case—the greater security of the property room—requires a different result than *Hudson.* Because we find no distinction of legal significance, we see no reason to reach a different conclusion here.

### A.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of [the Fourth] Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasion by government officials." *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). This protection, however, applies only in contexts where the citizen in question has a reasonable expectation of privacy in the place or things to be searched. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Blehm,* 44 Colo.App. 472, 475–76, 623 P.2d 411, 414 (1980). Indeed, the "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); *see also Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996).

■ In the absence of a reasonable expectation of privacy, law enforcement officials are free to conduct a warrantless search notwithstanding whether the search is also justified by exigent circumstances or some other exception to the warrant requirement of the Fourth Amendment and the Colorado Constitution. In other words, a reasonable expectation of privacy is the *sine qua non* of a challenge to the validity of a search and seizure. *See Florida v. Riley,* 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989).

The United States Supreme Court has recognized that prisoners have little, if any, reasonable expectation of privacy while incarcerated. *See Hudson v. Palmer,* 468 U.S. 517, 526–28, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984); *see also United States v. Edwards,* 415 U.S. 800, 804–05, 94 S.Ct. 1234, 1237–38, 39 L.Ed.2d 771 (1974) (upholding search of suspect in custody as reasonable). This principle was applied recently in *United States v. McVeigh,* 940 F.Supp. 1541, 1556–57 (D.Colo.1996), where a federal district court approved the actions of the Federal Bureau of Investigation in sending a prisoner's clothing to a forensic laboratory for a chemical analysis without obtaining a search warrant. *Accord Kight v. State,* 512 So.2d 922, 927 (Fla.1987).

### B.

Under the particular facts of this case, we hold that Salaz had no reasonable expectation of privacy in his clothing. Consequently, the second warrantless search of Salaz's clothing did not violate the Fourth Amendment. As our cases have noted, "[a] prison cell is not a place in which the occupant can expect to be free from all searches unless accompanied by a warrant. Constant surveillance is the order of the day...." *Moore v. People,* 171 Colo. 338, 342–43, 467 P.2d 50, 52 (1970). "Searches conducted by officials entrusted with the orderly operation of the ... [correctional institutions] of this state are not unreasonable so long as they are not conducted for the purpose of harassing or humiliating the inmate or in a cruel or unusual manner." *Id.* at 342, 467 P.2d at 52 (citation omitted); *see also Blehm,* 623 P.2d at 414.

■ The validity of a search of an inmate's clothing in a jail or other correctional facility can be upheld without regard to whether the inmate subjected to the search has been convicted or is in custody for some other reason. *See Hudson v. People,* 196 Colo. 211, 214, 585 P.2d 580, 581–82 (1978) (rejecting distinction between searches of convicts and suspects);

*Blehm*, 623 P.2d at 414 (same); *accord State v. Apelt*, 176 Ariz. 349, 861 P.2d 634, 649 (1993) (applying *Hudson v. Palmer* to search of cell of defendant detained while awaiting trial).

■ This lower protection accorded to an inmate's clothing stems from the fact that correctional facilities are "fraught with security dangers." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); *see also Hudson v. Palmer*, 468 U.S. at 527–28, 104 S.Ct. at 3200–01; *Blehm*, 623 P.2d at 414. The need for preservation of internal order and discipline as a general matter—not to mention the specific and direct threats to security posed by the availability of drugs or weapons—weigh heavily against recognition of any expectation of privacy in this case.[6] Because we conclude that Salaz had no expectation of privacy in his clothing while it was in the custody of jailers, we need not explore whether a warrantless search of a prisoner's property violates a reasonable expectation of privacy—diminished or otherwise—under other circumstances.

### III.

■ We hold, then, that jailers are not required to obtain a warrant to conduct a second search of an inmate's clothing which has been inventoried and continues to be held in the jail's custody for safekeeping. *Accord Kight*, 512 So.2d at 927. Accordingly, the ruling of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

MARTINEZ, J., dissents.

BENDER, J., does not participate.

Justice MARTINEZ dissenting:

The majority holds that a warrantless search under the circumstances of this case does not violate the Fourth Amendment be-

cause an arrestee has no reasonable expectation of privacy in property seized by police pursuant to a booking, or inventory, search. *See* maj. op. at 1277. Because I believe that an arrestee does have a reasonable, although diminished, expectation of privacy in his or her inventoried property, and because the search in this case was conducted without a warrant and therefore was not reasonable under the Fourth Amendment, I respectfully dissent.

### I.

The facts of this case are presented thoroughly by the majority opinion. *See* maj. op. at 1277. I will not recount them here except to emphasize two points. First, the trial court's ruling concerned only the necessity of a search warrant under the circumstances of this case. The trial court did not reach the issue of whether the facts of this case established probable cause to support a search, and the limited record before us does not reveal sufficient information regarding probable cause. Thus, neither the majority, nor I, address the existence of probable cause. Secondly, the trial court expressly found, as a matter of fact, that "there was no threat to jail order and security in this case." This finding is supported by the trial court's preliminary factual findings that "Mr. Salaz had no access to the shoes," that there was no "argument or evidence" that Salaz was attempting to gain access to the shoes, and that the shoes were kept in a locker in a locked room accessible only to jail personnel through the central control room.

### II.

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. *See Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334

---

6. Some cases have held that jail and prison officials may create a reasonable expectation of privacy through a course of conduct that leads a prisoner or visitor to believe that their privacy will be respected. *See, e.g., People v. Harfmann*, 38 Colo.App. 19, 555 P.2d 187 (1976) (officials created expectation of privacy by leaving prisoner and attorney alone in apparently secure

room). We intimate no view on what conduct might give rise to such an expectation.

Likewise, we need not explore the other potential limitations on the power of jailers to conduct warrantless searches, although we note that searches undertaken solely for the purpose of harassment would not be permissible. *See Hudson v. Palmer*, 468 U.S. at 530, 104 S.Ct. at 3202.

(1993); *People v. D.F.*, 933 P.2d 9, 11 (Colo. 1997). This protection only applies, however, where the individual in question has a reasonable expectation of privacy in the place or things to be searched. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *see also* maj. op. at 1278. As the majority notes, the existence of a reasonable expectation of privacy is necessary to a challenge to the validity of a search and seizure under the Fourth Amendment. *See* maj. op. at 1278.

Where a reasonable expectation of privacy exists, a warrantless search and seizure is unreasonable unless it is justified by an established exception to the Warrant Clause of the Fourth Amendment. *See Dickerson*, 508 U.S. at 371, 113 S.Ct. at 2134; *United States v. Edwards*, 415 U.S. 800, 802, 94 S.Ct. 1234, 1236, 39 L.Ed.2d 771 (1974); *Katz*, 389 U.S. at 357, 88 S.Ct. at 514; *People v. H.J.*, 931 P.2d 1177, 1180 (Colo.1997). In the context of jail house searches, the United States Supreme Court has held that "the inventory search constitutes a well-defined exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983); *see South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Edwards*, 415 U.S. at 802–805, 94 S.Ct. at 1236–1238. After balancing the "intrusion [of the inventory search] on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests," the Court has held that an inventory search is supported by a range of police interests. *Lafayette*, 462 U.S. at 644, 103 S.Ct. at 2608.

The following interests support an inventory search: (1) protection of the arrestee's property, (2) protection of police against false claims that the property is lost or damaged, (3) protection of jail personnel and inmates from the risks associated with dangerous instrumentalities or substances concealed in the property, and (4) assistance in ascertain-

ing or verifying the arrestee's identity. *See id.* at 646, 103 S.Ct. at 2609; *People v. Inman*, 765 P.2d 577, 579 (Colo.1988); *see also Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (inventory search serves to protect an owner's property, to protect police against property claims, and to guard police from danger); *Edwards*, 415 U.S. at 808–09, 94 S.Ct. at 1240 (inventory searches serve "police interest in weapons, means of escape, and evidence"); *Hudson v. People*, 196 Colo. 211, 214, 585 P.2d 580, 581 (1978) ("the rationale [behind inventory searches] is that of preserving order and security in places of incarceration"). These interests permit jail personnel to conduct an extensive inventory search of the arrestee and his or her property, including opening any closed containers found on the arrestee's person. *See Inman*, 765 P.2d at 579. The fact that these interests may be served by a less intrusive search does not make the inventory search unreasonable under the Fourth Amendment. *See Lafayette*, 462 U.S. at 648, 103 S.Ct. at 2610–11; *Inman*, 765 P.2d at 580.[1]

However, in order to prevent unreasonable expansions of the right to conduct an inventory search, the search must be conducted pursuant to an established police routine or policy. *See Wells*, 495 U.S. at 4, 110 S.Ct. at 1635; *People v. Taube*, 864 P.2d 123, 130 (Colo.1993). As the Supreme Court has held:

> Our view that standardized criteria or established routine must regulate the opening of containers found during inventory searches is based on the principle than an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.

*Wells*, 495 U.S. at 4, 110 S.Ct. at 1635; *see also Lafayette*, 462 U.S. at 648, 103 S.Ct. at 2610–2611. The standardized procedures governing inventory searches must be designed to produce an inventory, and "the individual police officer must not be allowed

---

1. Once property has been seized and searched pursuant to an inventory search, the police exercise dominion over the property as bailees. Items held pursuant to an inventory search are surrendered to the arrestee upon release. Of course, where police have reason to believe that the inventoried property is evidence of a crime with which the arrestee has been charged, the police may hold or further examine the property in furtherance of their evidence-gathering function. *See Edwards*, 415 U.S. at 808–09, 94 S.Ct. at 1240; *United States v. McVeigh*, 940 F.Supp. 1541, 1556 (D.Colo.1996); *People v. Rivard*, 59 Mich.App. 530, 230 N.W.2d 6, 7–8 (1975).

so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Wells,* 495 U.S. at 4, 110 S.Ct. at 1635 (citations omitted); *see Taube,* 864 P.2d at 130.

The foundation of the constitutional requirements of a proper inventory search is that an arrestee's expectation of privacy in his or her inventoried property may yield to the weighty governmental interests served by the search. The decisions of those courts that have examined the search of an arrestee or inmate are premised on the fact that an individual retains a reasonable, albeit diminished, expectation of privacy even while incarcerated. *See Wells,* 495 U.S. at 4, 110 S.Ct. at 1635; *Lafayette,* 462 U.S. at 643–644, 103 S.Ct. at 2608; *Edwards,* 415 U.S. at 808–09, 94 S.Ct. at 1240; *Inman,* 765 P.2d at 579; *Hudson,* 196 Colo. at 214, 585 P.2d at 581; *see generally Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) ("we have insisted that prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration"); *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) ("though his right may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime"); *Boling v. Romer,* 101 F.3d 1336, 1339 (10th Cir.1996) (obtaining and analyzing DNA or saliva of an inmate implicates Fourth Amendment concerns, but "it is a reasonable search and seizure ... in light of an inmate's diminished privacy rights [as balanced against relevant governmental interests]"); *Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir.1982) ("[a]lthough the inmate's right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether").

The principle that one retains a reasonable, yet diminished, expectation of privacy even while incarcerated is subject to one exception. A prisoner does not have a reasonable expectation of privacy within his or her prison cell. *See Palmer,* 468 U.S. at 527–28, 104 S.Ct. at 3200–01. An expectation of privacy within a prison cell is "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* In carving out this exception for a prison cell, the Supreme Court balanced the individual's constitutional right to privacy with the legitimate interests of the prison, and found that the privacy right must always yield in this context. *See id.* Of course, the existence of this exception does not abrogate the rule that an individual normally possesses an expectation of privacy while incarcerated; instead, this exception emphasizes the need to balance the competing interests of the individual and the government. *See Dunn v. White,* 880 F.2d 1188, 1191 (10th Cir.1989) ("[a]lthough the Supreme Court has thus foreclosed any fourth amendment challenge to the search of a prison cell ... the prisoner's privacy interest in the integrity of his own person is still preserved"); *Cameron v. Hendricks,* 942 F.Supp. 499, 502 (D.Kan.1996) ("though inmates have no legitimate expectation of privacy in their cells ... the traditional Fourth Amendment prohibition against unreasonable searches extends to personal body searches of inmates"); *see also Lafayette,* 462 U.S. at 644, 103 S.Ct. at 2608 (balancing an individual's Fourth Amendment interests against the governmental interests supported by an inventory search).

The fact that an incarcerated individual normally retains a reasonable expectation of privacy in his or her property, implicating Fourth Amendment concerns, is further underscored by the traditional requirements of inventory searches. The requirement that inventory searches be conducted pursuant to a standardized routine or policy would be unnecessary if the search did not implicate the Fourth Amendment's prohibition against unreasonable searches and seizures. As discussed above, standardized procedures help insure that the inventory search is reasonable under the Fourth Amendment. *See Wells,* 495 U.S. at 4, 110 S.Ct. at 1635. Moreover, there would be no need to identify the specific reasons behind the inventory search if the search need not be reasonable. In fact, if an incarcerated individual had absolutely no expectation of privacy, the inventory search would not be a "search" at all

under the Fourth Amendment. The relevant federal cases and those of this court recognize, however, that an inventory search is such a "search" and require the inventory process to be reasonable.

With this expression of the constitutional requirements for conducting a jail house inventory search, I now turn to the trial court's treatment of the warrantless search in this case.

### III.

The search in this case differs from the ordinary inventory search conducted pursuant to an arrest. This case involves a second, more detailed, search of Salaz's previously-inventoried property. We have dealt with such a search on only one occasion. In *Hudson v. People,* jail officials received a tip from an inmate that the inventoried clothes of another inmate contained illegal drugs not discovered in the inventory search. *See* 196 Colo. at 214, 585 P.2d at 581. The jail officials also had information that the owner of the clothes was attempting to gain access to the clothes. Furthermore, there was evidence which suggested that security surrounding the confiscated property could be breached without much effort. *See id.* at 214–15, 585 P.2d at 582.

In *Hudson,* we held that "the rationale [behind inventory searches] which we have recognized as controlling is that of preserving order and security in places of incarceration." *Id.* at 214, 585 P.2d at 582. Thus, in light of the "weighty governmental interest in maintaining security," we held that "where jail conditions were such that there was a real possibility that someone could gain access to the drugs, there was a sufficiently immediate threat to jail order and security to justify a warrantless search." *Id.* at 214–15, 585 P.2d at 582. Our decision in *Hudson* is consistent with the principle that incarcerated individuals retain a diminished expectation of privacy which may be overcome only by legitimate governmental interests served by inventory searches. *See, e.g., Lafayette,* 462 U.S. at 646, 103 S.Ct. at 2609–10; *Inman,* 765 P.2d at 579.

Applying *Hudson* to the facts of this case, the trial court concluded that the second warrantless search of Salaz's shoes was not reasonable. Unlike in *Hudson,* the trial court here found that "there was no threat to jail order and security in this case" because Salaz had no access to the shoes, or the contraband therein, and there was no argument or evidence that there was a real possibility that anyone could gain access to the shoes. Thus, the second search of the shoes for the purpose of retrieving the contraband therein did not serve the governmental interest in maintaining order and security within the jail, and in fact went beyond the scope of a proper inventory search. *See Wells,* 495 U.S. at 4, 110 S.Ct. at 1635; *Taube,* 864 P.2d at 130. Moreover, the trial court did not find that the warrantless search served any other legitimate governmental purpose behind an inventory search, nor is there evidence in the limited record before us to support such a finding.

The majority represents its holding as a discussion of whether the search under these circumstances is "reasonable." *See* maj. op. at 1278. The majority asserts that it can "find no distinction of legal significance" between this case and *Hudson,* and arrives at the same result here as reached in *Hudson,* concluding that "Salaz had no reasonable expectation of privacy in his clothing." *Id.* at 1278. The *Hudson* court, however, recognized that inmates do have a reasonable, if diminished, expectation of privacy in their property and that any search of their property must be reasonable under the Fourth Amendment. *See Hudson,* 196 Colo. at 214, 585 P.2d at 581. If Salaz has no reasonable expectation of privacy, the Fourth Amendment would not be implicated and there would be no such reasonableness requirement. The majority's conclusion is contrary to *Hudson* and the well-established precept that incarcerated persons do retain a reasonable, if diminished, expectation of privacy. The *Hudson* court held that the second warrantless search of the inmate's property in that case was reasonable because it served the traditional purposes of an inventory search. *See id.,* 585 P.2d at 581–82. In this case, the second warrantless search of Salaz's inventoried property did not qualify as a

valid inventory search because the purposes underlying an inventory search were fully satisfied when the property was stored in a secured area beyond the reach of any inmate. Furthermore, the trial court did not find that the search fit into any other established exception to the warrant requirement. Thus, employing *Hudson* to analyze this case, I conclude that this search violated the Fourth Amendment's prohibition against unreasonable searches and seizures. As a consequence, I disagree with the majority's conclusion.

### IV.

An individual retains a reasonable, yet diminished, expectation of privacy while incarcerated. Thus, the Fourth Amendment mandates that a jail house search of the individual's personal property be reasonable. The search in this case was not conducted pursuant to a search warrant, and the search does not fit into an established exception to the Fourth Amendment's warrant requirement. Consequently, this search was unreasonable and therefore unconstitutional. I would affirm the trial court's suppression order because the contraband . and Salaz's statements to the police were the product of an unconstitutional search.