The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Patricia Jean INMAN,
Defendant–Appellee.

No. 88SA218.

Supreme Court of Colorado,
En Banc.

Dec. 12, 1988.

Dean J. Johnson, Dist. Atty., Cortez, for plaintiff-appellant.

T. Curtis Bobbitt, Deputy State Public Defender, Durango, for defendant-appellee.

QUINN, Chief Justice.

In this interlocutory appeal the People challenge an order suppressing a small packet of cocaine seized from a purse belonging to the defendant, Patricia J. Inman, during an inventory search performed at a county jail in the course of booking the defendant for drunk driving. We conclude that the district court applied an incorrect legal standard with respect to the scope of a permissible inventory search upon arrest, and we accordingly reverse the order of suppression.

I.

The defendant was charged with the crimes of unlawful possession of cocaine,[1] unlawful possession of not more than one ounce of marijuana,[2] and operating a motor vehicle while her ability to drive was impaired by the consumption of alcohol,[3] all of which were alleged to have occurred on December 23, 1987, in Montezuma County, Colorado. After entering a plea of not guilty to the charges, the defendant filed a motion to suppress the cocaine and marijuana, claiming that the seizure of these materials from her purse violated the

1. § 18–18–105(1)(a) and (2)(a)(I), 8B C.R.S. (1986 & 1988 Supp.).

2. § 18–18–106(1), 8B C.R.S. (1986).

3. § 42–4–1202(1)(b), 17 C.R.S. (1984).

Fourth and Fourteenth Amendments to the United States Constitution and article II, section 7 of the Colorado Constitution.

The evidence at the suppression hearing was uncontradicted and established the following sequence of events. On December 23, 1987, at approximately 1:56 a.m., patrolman Eric Souders of the Cortez Police Department observed a car traveling west on East Main Street in Cortez without any taillights. The officer pulled over the vehicle, approached the car, and spoke with defendant who was driving the vehicle. During their conversation Officer Souders noticed that the defendant's speech was slurred and that her breath smelled of an alcoholic beverage. At the officer's request, the defendant agreed to perform some roadside sobriety maneuvers. Because the defendant's performance was unsatisfactory, Officer Souders informed her that she was under arrest for drunk driving. The defendant was carrying a purse at this time, so the officer took the purse and placed it on the passenger seat of the police vehicle. Souders released the defendant's vehicle to the passenger who was riding with her when the stop occurred, and then placed the defendant in the police vehicle and drove her to the Montezuma County Jail.

At the jail Souders gave the defendant's purse to Officer Crystal Baxter, who was a detention officer at the jail, so that Baxter could perform an inventory search of the contents of the purse. The inventory search of the purse was part of the routine booking procedure at the county jail. Upon Baxter's initial inspection of the contents of the purse, she discovered two bags containing a green leafy substance which was later determined to be marijuana. Baxter then gave the purse to Souders, who was assisting her in the booking process, so that Souders could make a further check of any items which Baxter might have overlooked. Souders, in examining the inside of the purse, located a small cosmetic bag inside the main compartment. Upon opening the cosmetic bag the officer observed a small packet of brown paper about the size of a half-dollar. Souders opened the paper packet and saw that it contained a white powdery substance which was later determined to be cocaine.

The district court, in granting the motion to suppress, ruled that Officer Souders had probable cause to arrest the defendant for drunk driving and that Officer Baxter properly took account of the contents of the defendant's purse as part of the routine booking procedure at the county jail and thus properly seized the marijuana from the purse. With respect to the brown paper packet inside the small cosmetic bag, however, the district court ruled that the officers had no reason to suspect that the packet contained contraband and that, therefore, the seizure of the packet and the examination of its contents exceeded the legitimate purposes of an inventory search and constituted an unlawful search and seizure. The district court accordingly suppressed the brown paper packet, the cocaine inside the packet, and any other evidence or testimony regarding the packet and its contents.

Pursuant to C.A.R. 4.1, the People thereafter filed this interlocutory appeal. The People claim that the district court applied an erroneously restrictive standard in ruling that Officer Souders' seizure of the paper packet and his examination of its contents were beyond the scope of a constitutionally permissible inventory search. We agree with the People's argument.

## II.

Appellate review of a suppression ruling is limited to the legal bases set forth in the district court's ruling and not necessarily the grounds alleged in the motion. Although the defendant's motion to suppress cited both the United States and the Colorado Constitutions, the district court failed to state in its ruling whether the order of suppression was based on federal or state constitutional standards. In the absence of a clear statement that a suppression ruling is grounded on state as opposed to federal constitutional law, we will presume that a court relied on federal law in reaching its decision. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77

L.Ed.2d 1201 (1983) (where a state court decision fairly appears to rest on federal law or to be interwoven with federal law, it will be presumed that the case was resolved on the basis of federal law, unless the state court decision clearly indicates that the court relied on independent state grounds for its decision, with federal cases being used only for guidance and not as controlling authority); *People v. Gann,* 724 P.2d 1318 (Colo.1986) (where a motion to dismiss for prosecutorial suppression of exculpatory evidence is based on due process of law and the district court in its order of dismissal fails to make any specific reference to the Colorado Constitution, this court will presume that both the motion and the lower court's ruling were based exclusively on federal constitutional standards). We therefore resolve this case on the basis of federal constitutional standards applicable to an inventory search of an arrestee at a police station or jail following arrest.[4]

The controlling federal standards applicable to this case were clearly articulated by the United States Supreme Court in *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). In *Lafayette,* the defendant was arrested for disturbing the peace and taken to the station house where the police, in accordance with routine administrative procedure, inventoried the contents of his shoulder bag. Ten amphetamine pills were removed from a cigarette package inside the bag, and Lafayette was charged with violating the Illinois Controlled Substances Act. The Illinois court of appeals affirmed the trial court's suppression of the amphetamines because, in its view, the legitimate goals of preserving the defendant's property and protecting the police from a claim of lost or stolen property could have been achieved in a less intrusive manner. The United States Supreme Court reversed the order of suppression and held that the search of the defendant's shoulder bag and the examination and inventory of its contents were constitutionally permissible.

The Supreme Court noted in *Lafayette* that "[a] so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration," *Lafayette,* 462 U.S. at 644, 103 S.Ct. at 2608, and is supported by a broad range of governmental interests—namely, the protection of the arrestee's property while in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the arrestee and others from risks associated with a dangerous instrumentality or substance that might be concealed in an innocent looking article. *Id.* at 646, 103 S.Ct. at 2609; *see also South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). In light of these interests, the Court concluded that "[e]xamining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." *Lafayette,* 462 U.S. at 646, 103 S.Ct. at 2609. The reasonableness of that procedure, in the Court's view, arises "independently of a particular officer's subjective concerns" that some object might pose a special hazard or risk if not closely examined. *Id.*

In reaching its decision in *Lafayette,* the Court rejected the argument that the police might have searched the defendant's prop-

---

**4.** In *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976), this court affirmed the suppression of contraband discovered inside a closed knapsack in the course of an inventory search of a vehicle on the basis that the search of the closed knapsack violated the Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution. While it is clear that under federal constitutional standards *Counterman* is no longer valid, *see Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), *rev'g People v. Bertine,*

706 P.2d 411 (Colo.1985), this court has not yet determined whether *Counterman* retains any vitality under the Colorado Constitution. *See Bertine,* 706 P.2d at 423 (Rovira, J., dissenting). Since the district court in this case did not explicitly resolve the suppression motion under state constitutional standards, the viability of *Counterman* as a matter of state constitutional doctrine is not before us in this case, and we accordingly express no opinion on that question.

erty by employing less intrusive means, such as sealing the shoulder bag within a plastic bag or box and placing it in a secured locker:

> We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. It is evident that a station-house search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.
>
> Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.

*Id.* at 648, 103 S.Ct. at 2610.

Four years after the Supreme Court's decision in *Lafayette v. Illinois,* the Court in *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 again addressed the scope of an inventory search. Bertine was arrested for driving under the influence of alcohol, and the police, pursuant to departmental procedures, inventoried the contents of Bertine's van before the arrival of a tow truck which was to take the van to an impoundment lot. In conducting the inventory, an officer opened a closed backpack which was discovered directly behind the driver's seat of the van. Inside the backpack was a nylon bag containing metal cannisters. The officer opened the cannisters and saw that they contained cocaine, methaqualone tablets, drug paraphernalia, and $700 in cash. This court, interpreting *Lafayette* to be applicable to a station house search and not to an inventory search of an impounded motor vehicle, affirmed the district court's suppression of the drugs and other items located inside the cannisters on the basis that the defendant's privacy expectation in the closed backpack outweighed any interest of the police in inventorying its contents as part of a routine procedure incident to impound-

ment. *People v. Bertine,* 706 P.2d 411 (Colo.1985). The United States Supreme Court reversed and held that it was not necessary for the police, before examining the contents of the cannisters, to weigh the defendant's privacy interest in those containers against the possibility that they might be the repository of dangerous or valuable items:

> We think that such a requirement is contrary to our decisions in *Opperman* and *Lafayette,* and by analogy to our decision in *United States v. Ross,* 456 U.S. 798 [102 S.Ct. 2157, 72 L.Ed.2d 572] (1982):
>
>> "Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit." *Lafayette, supra* [462 U.S.] at 648 [103 S.Ct. at 2610].
>>
>> "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross, supra* [456 U.S.] at 821 [102 S.Ct. at 2171].
>
> We reaffirm these principles here: " '[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " See *Lafayette, supra* [462 U.S.] at 648 [103 S.Ct. at 2610] (quoting *New York v. Belton,* 453 U.S. 454, 458 [101 S.Ct. 2860, 2863, 69 L.Ed.2d 768] (1981)).

*Bertine,* 479 U.S. at 374–75, 107 S.Ct. at 743.

## III.

The decisions of the United States Supreme Court in *Lafayette* and *Bertine* compel the reversal of the suppression order entered in this case. In suppressing the cocaine, the district court relied on the faulty premise that some independent justification, other than the defendant's arrest for drunk driving and the routine booking procedure incident to that arrest, was required before the officers could constitutionally seize the paper packet from the defendant's purse and examine the contents of the packet. The arrest of the defendant for drunk driving and the booking procedure at the county jail furnished an adequate constitutional basis for the police to seize and examine all the items recovered from the defendant's person or possession, including articles in her purse, and to open any container inside the purse and examine its contents. The officers, in other words, had the right to conduct a complete inventory of the defendant's possessions without regard to whether they harbored any subjective concern that a particular item might contain a dangerous substance which could thereafter threaten jail security or might contain a valuable object for the loss of which the officers could conceivably be held responsible. Under the circumstances of this case, the seizure of the paper packet and the examination of its contents comported with federal constitutional standards applicable to a routine inventory search incident to the defendant's arrest and jailhouse detention for a crime, and the district court erred in ruling to the contrary.

The order of suppression is accordingly reversed.