### State of Vermont v. Todd M. Robinson

[683 A.2d 1005]

No. 95-556

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 26, 1996

*John W. Vorder Bruegge*, Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Judith A. Ianelli*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Morse, J.** Following denial of his motion to suppress, defendant entered into a conditional plea for possession of marijuana and a switchblade, reserving the right to appeal the denial. The contraband had been found during a search incident to incarceration for summary criminal contempt. Defendant argues that the court's order of summary contempt was an abuse of discretion, requiring suppression of the contraband. He did not appeal the contempt order directly. Because we decline to extend the applicability of the exclusionary rule to these circumstances, we affirm without reaching the issue of the legality of the contempt order.

On March 16, 1995, defendant and his estranged wife, Stacey Robinson, and her attorney, met at family court to resolve custody and visitation issues relating to their minor child. Defendant appeared pro se.

During the proceedings, Stacey Robinson was asked whether defendant's temper caused her concern in regard to his visitation with their daughter. Before she could respond, defendant interrupted, declaring, "Might as well say yes, sweetie, because I'm not going to see you or her," and the following exchange ensued:

> Court: "You might as well keep your mouth shut, sir. You're in a court of law. And if you say anything again without being asked to speak, you'll be held in contempt and you'll be placed in custody status. Do you understand that?"
>
> Defendant: "Then, you can hold me in contempt, sir. You can have whatever you want, as far as visitations."

Defendant then stood up and, disregarding the court's order to remain seated, began to walk out of the courtroom. The court officer attempted to restrain him by holding his arm.

> Defendant: "Let go of me you fucking bitch. Let go of me. I want my fucking arm. I can't deal with this."
>
> . . . .
>
> Court: "—no, we're going to stay here."
>
> Defendant: "Sir, let me tell you something. Let go of me. I haven't threatened you. I haven't done anything to you. I need to take a walk."

The court again ordered defendant to sit down, and a struggle followed as the court officer pushed defendant against the wall, then to the floor and, with the help of a second officer, handcuffed him. During the scuffle, defendant referred to the court officer as a "goon."

The proceedings were disrupted for about three minutes. After defendant had been fully restrained, the court made findings on the record:

> The record will reflect that Mr. Robinson . . . has engaged in uncontrolled behaviors and resisted the efforts of the security officers to control his behaviors in the presence of the court.
>
> He's adjudged in willful contempt of the court's orders. And consequence of his contemptuous behavior is disruptive of the orderly proceedings of this court. He will be sentenced to serve 10 days in jail. It's a contempt — a summary contempt committed in the presence of the court. And consequence of these behaviors, a mittimus shall issue for the incarceration of Todd M. Robinson for a period of 10 days. Summary contempt of court.

Under the order, defendant was taken to a holding cell in the courthouse. There he was searched, whereupon the switchblade and marijuana were found.

Defendant claims that the judge's abuse of discretion requires suppression of the fruits of the search. He is correct that a search incident to an illegal arrest requires suppression of the evidence obtained. *State v. Laflin*, 160 Vt. 198, 201, 627 A.2d 344, 346 (1993). Because of the unique nature of summary contempt, however, the policies behind the exclusionary rule do not require suppression of evidence found incident to incarceration for summary contempt.

■ V.R.Cr.P. 42(a) provides that criminal contempts may be punished summarily where contemptuous conduct occurs in the presence of the court and the judge certifies to having witnessed the conduct. The primary distinction between summary contempt and other forms of criminal contempt is the lack of due process afforded the contemnor once the order is made. "[S]ummary contempt power permits the judge citing for contempt to also adjudicate the case and find the offender guilty without notice, a hearing or the other rudimentary features which constitute due process of law." Note, *Taylor v. Hayes: A Case Study in the Use of the Summary Contempt Power Against the Trial Attorney*, 63 Ky. L.J. 945, 947 (1975). The charge and determination of guilt are collapsed into a single act, and the offended judge acts as victim, prosecutor, judge and jury. R. Goldfarb, *The Constitution and Contempt of Court*, 61 Mich. L. Rev. 283 (1962). Guilt is established in one fell swoop, prompting Justice

Hugo Black to call summary contempt "an anomaly in the law." *Green v. United States*, 356 U.S. 165, 193 (1958) (Black, J., dissenting). While the contemnor may challenge the grounds for the order in a subsequent appeal, the effect of the order, when made, is a finding of guilty and the imposition of a sentence. Thus, properly viewed, the search in this case is analogous to a post-conviction inventory search prior to incarceration. Evidence found during such an inventory search is not subject to suppression even if the conviction is ultimately overturned on appeal.

This outcome is consistent with the policies underlying the exclusionary rule.

> "The primary justification for the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights. [Supreme Court] *decisions have established that the rule is not a personal constitutional right.* . . . Instead, 'the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its *deterrent effect* . . . .'"

*In re Saunders*, 138 Vt. 259, 262-63, 415 A.2d 199, 201 (1980) (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)) (emphasis added) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

The deterrent effect of the exclusionary rule on the "arresting" official under the circumstances of this case is nonexistent. Extension of the exclusionary rule here cannot be justified on that ground.

■ Moreover, even if one purpose of the exclusionary rule were to deter judicial error in the criminal adjudication process, its application here would make no sense. The purpose of summary contempt is to restore order. Evidence discovered when the contemnor is searched in preparation for his incarceration is immaterial to the judge's determination that an order of summary contempt had been warranted. That decision is made on the spot, and its purpose is achieved independent of the search. By the time the search occurs, the summary contempt proceedings have concluded, the contemnor has been removed from the courtroom, and presumably, courtroom order and dignity have been restored. The contempt order has no evidence-gathering purpose. Furthermore, it is not contended, nor do the facts suggest, that summary contempt was a pretext for the search. Therefore, application of the exclusionary rule under these circumstances is inconsistent with the policies behind it.

Our holding today is consistent with *State v. Oakes*, 157 Vt. 171, 598 A.2d 119 (1991). In *Oakes*, this Court declined to adopt the "good faith" exception to the warrant requirement. *Id.* at 173, 598 A.2d at 121. In *Oakes*, we were concerned that the good faith exception would shield judges and magistrates from subsequent judicial review of their probable-cause determination, and this would reduce the level of care taken in preparing warrants. *Id.* at 181, 598 A.2d at 125. This would in turn result in less guidance to judicial officers as to what constitutes sufficient probable cause. *Id.* Refusing to apply the exclusionary rule in the present case would not erode the ability of this Court to offer guidance on Fourth Amendment issues because here we are asked to review a contempt order, not the merits of a search warrant. No suppression issue was triggered by the contempt. There simply are no benefits associated with improvements to police work or the adjudicative process that would be achieved by application of the exclusionary rule to the facts of this case.

*Affirmed.*