**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Keith Victor GOSSELIN, Defendant–Appellant.**

No. 07CA0799.

Colorado Court of Appeals, Div. VI.

Oct. 16, 2008.

John W. Suthers, Attorney General, John J. Fuerst III, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Keyonyu X O'Connell, Denver, CO, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Keith Victor Gosselin, appeals the trial court's order finding that his statements to police officers were voluntary and reinstating the judgment of conviction imposed upon a jury verdict finding him guilty of second degree murder. We affirm the order and judgment.

## I.  Background

Cañon City police officers responded to a call from the home of defendant's sister, where they found defendant distraught and repeatedly stating that he had killed someone and that he knew the person was dead. The officers read defendant his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant's sister informed the officers that the family was arranging for counsel to represent him, and defendant stated that he wanted an attorney.

Defendant was then taken to the police station, where he was interviewed by two Colorado Springs homicide police officers. Both officers were aware that defendant had invoked his right to counsel. Nevertheless, they began questioning him and continued to do so even after defendant informed them that he thought he was supposed to have an attorney. In the course of this questioning, one of the officers referred to the "extreme emergency" and asked defendant to tell them where to locate the victim's body. Noting that defendant was crying, this officer decided to "appeal to [defendant's] conscience" and told defendant that, if someone was dead or dying, he deserved to receive the last rites.

Defendant ultimately stated that he wanted to help, and he described the area in which the victim's body was located and drew the officers a map to help them find the body. The officers immediately conveyed this information to the search and rescue team, so that the members of that team could try to locate the victim. Defendant reiterated his offer to help after conferring with counsel and expressed his willingness to go with the officers to try to find the victim. Shortly after defendant made this offer, however, the officers learned that search and rescue had found the victim, based on the information previously provided by defendant. The public defender who had arrived to assist defendant then told the officers that he did not want defendant being interviewed further.

Defendant moved to suppress the statements that he made to the various officers and any evidence obtained as a result of his statements. In its initial ruling on defendant's motion, the trial court found that the statements made to the Cañon City officers were admissible. The court concluded, however, that the statements made to the Colorado Springs officers and the map were inadmissible because they were taken in violation of defendant's Fifth Amendment rights. The court further determined, however, that the evidence regarding the victim's body was admissible because it would inevitably have been discovered in the absence of defendant's statements. The jury convicted defendant of second degree murder, and defendant appealed.

On appeal, a division of this court vacated defendant's conviction and remanded the case for reconsideration of his motion to suppress. *People v. Gosselin*, 2006 WL 1644664 (Colo.App. No. 04CA0129, June 15, 2006) (not published pursuant to C.A.R. 35(f) ) (*Gosselin I* ). The division concluded that the inevitable discovery doctrine did not apply under

the circumstances of this case. The division, however, agreed with the prosecution's argument that the physical evidence (i.e., the victim's body) might nevertheless be admissible if defendant's statements were voluntary. *Id.* (citing *United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004)). Because the trial court had not made sufficient findings regarding voluntariness, the division vacated defendant's conviction and remanded the case to the trial court for further proceedings. Specifically, the division instructed the court to determine, "based on the record and such additional evidence or argument as the court in its discretion may require, whether the statements that led to discovery of the body were voluntary." *Gosselin I.* If so, then the judgment of conviction was to be reinstated and would stand affirmed, subject to defendant's right to appeal that determination. *Id.* If not, then the judgment was to be reversed and a new trial held, at which evidence regarding the victim's body would be inadmissible. *Id.*

On remand, after determining that no further hearing was necessary, the trial court found that defendant's statements were voluntary and reinstated the judgment of conviction in accordance with the division's remand order. This appeal followed.

## II. Constitutional Provisions at Issue

In his reply brief, defendant asserted that article II, section 18 of the Colorado Constitution provides greater protection than the United States Constitution in the context of a *Miranda* violation. Thus, defendant argued that the victim's body, as the fruit of such a violation, should be suppressed under Colorado law, notwithstanding the Supreme Court's decision in *Patane*, which rejected the same argument under federal law. We ordered supplemental briefing to allow both parties to address this issue. Having now reviewed the parties' submissions and the record, we conclude that we may not reach this question here.

■■■ "Appellate review of a suppression ruling is limited to the legal bases set forth in the district court's ruling and not necessarily the grounds alleged in the motion."

*People v. Inman*, 765 P.2d 577, 578 (Colo. 1988). Here, the trial court did not state in either of its rulings on defendant's motion to suppress that its order was based on state constitutional standards, nor did it cite any provision of the state constitution. Without a clear statement from the trial court that its suppression ruling was grounded on state law as opposed to federal constitutional law, we must presume that the court relied on federal law in reaching its decision. *Id.* at 578–79 (citing *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)); *People v. Gann*, 724 P.2d 1318, 1320 (Colo.1986); *People v. Gee*, 33 P.3d 1252, 1257 (Colo.App.2001).

Accordingly, our review here is limited to the federal constitutional standards on which the trial court relied.

## III. Whether Physical Fruit Must Be Suppressed

Defendant contends that the trial court erred in refusing to suppress the physical evidence discovered as a result of statements obtained from him in violation of his *Miranda* rights. We disagree.

In *United States v. Patane*, 542 U.S. at 641–44, 124 S.Ct. at 2628–30, Justice Thomas, writing for a plurality of the Supreme Court, addressed the question of whether the failure to give a suspect *Miranda* warnings required suppression of the physical fruits of the suspect's unwarned but voluntary statements. The plurality determined that "a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule." *Id.* at 641, 124 S.Ct. at 2628 (plurality opinion). The plurality explained, "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." *Id.* at 641, 124 S.Ct. at 2629 (plurality opinion). The plurality, joined by two concurring Justices, thus concluded that the Self–Incrimination Clause of the Fifth Amendment is not violated by the introduction of physical evidence obtained as the result of voluntary, though unwarned, statements. *Id.* at 643–44, 124 S.Ct. at 2629–30 (plurality opinion); *id.* at 644–45, 124 S.Ct. at 2631 (Kennedy, J., con-

curring). The plurality did not, however, address the related question that we face here, namely, whether the continued interrogation of a suspect who received *Miranda* warnings and invoked his right to counsel requires the suppression of the physical fruits of such statements.

In *Miranda*, 384 U.S. at 470, 86 S.Ct. at 1625–26, the Supreme Court held that the Fifth Amendment privilege against self-incrimination includes the right of a suspect to consult with counsel before questioning and to have counsel present during any questioning if the suspect so desires. The Court further held that, if the suspect asks for counsel, any further interrogation must cease until an attorney is present. *Id.* at 473–74, 86 S.Ct. at 1627.

In *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Supreme Court reaffirmed that, when a suspect has invoked his or her right to counsel, all questioning must cease. *See also People v. Redgebol*, 184 P.3d 86, 99 (Colo.2008) (a request for counsel must be scrupulously honored). No further interrogation may occur unless the suspect initiates further communication, exchanges, or conversations with the police or subsequently and validly waives his or her right to counsel. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85. The Court noted, however, that "a valid waiver of that right cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484, 101 S.Ct. at 1885. In the absence of a valid waiver, continued questioning constitutes a violation of *Miranda*. *Id.* at 485, 101 S.Ct. at 1885.

■ Here, it is undisputed that the officers who interrogated defendant at the police station were aware of his request for counsel. Nonetheless, after consulting with a deputy district attorney, they continued to question defendant. Although the trial court on remand made no findings to this effect, it is apparent from the record and undisputed by the parties that defendant did not himself initiate further communication or waive his right to counsel. Accordingly, the officers violated defendant's rights under *Miranda* and *Edwards*.

■ Defendant urges us to find that this *Miranda/Edwards* violation amounts to a direct violation of his Fifth Amendment right against self-incrimination, thereby requiring suppression of the physical fruits of his statements. *Cf. Patane*, 542 U.S. at 642–43, 124 S.Ct. at 2629 (noting that, if the taking of unwarned statements violated a suspect's constitutional rights, then a strong deterrence-based argument could be made for suppression of the fruits). We are not persuaded.

In *People v. Bradshaw*, 156 P.3d 452 (Colo. 2007), the supreme court addressed the question of whether the physical fruit of a *Miranda* violation is nevertheless admissible at trial. There, the defendant had made an unequivocal and unambiguous request for counsel, but the police investigator continued to interrogate him. The trial court suppressed the defendant's statements and the physical evidence that resulted from his consent to a search of his mouth for DNA evidence. The prosecution then filed an interlocutory appeal.

The supreme court reversed the trial court in part. Although the court held that the defendant's statements were properly suppressed, it concluded that the trial court erred in applying the Fourth Amendment "fruit of the poisonous tree" doctrine to the *Miranda* violation before it. *Id.* at 459, 86 S.Ct. 1602. In reaching this determination, the court did not cite *Patane*. Rather, the court's analysis centered on *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In *Elstad*, the Supreme Court drew a distinction between actually coerced statements and statements made after a *Miranda* violation. *Id.* at 310, 105 S.Ct. at 1293. Relying on this distinction, the *Bradshaw* court concluded that the "fruit of the poisonous tree" doctrine did not apply in the defendant's case because, although the physical evidence was obtained after a *Miranda* violation, this violation did not rise to the level of actual coercion in violation of the Fifth Amendment. *Bradshaw*, 156 P.3d at 459. Because of the posture of the case, the court did not address the question of volun-

tariness. The court suggested, however, that the proper question for the trial court was whether the defendant's statements were voluntary. *Id.* at 456.

In light of *Bradshaw,* we conclude that the trial court here did not err in refusing to suppress the physical evidence at issue as the fruit of a *Miranda/Edwards* violation. *See also Taylor v. State,* 274 Ga. 269, 553 S.E.2d 598, 603–05 (2001) (fruit of voluntary statement obtained in violation of *Edwards* is admissible); *In re H. V.,* 252 S.W.3d 319, 327–29 (Tex.2008) (same). This, however, does not end our inquiry. The question remains as to whether defendant's statements that led to the discovery of the victim's body were voluntary, even though made after such a violation.

## IV. Voluntariness of Statements

■■■ "Coercive physical or psychological conduct by the government renders an otherwise voluntary statement involuntary, if the conduct plays a significant role in inducing the statement." *People v. Medina,* 25 P.3d 1216, 1222 (Colo.2001). The statement must not be the product of any direct or implied promise, nor can it be obtained by exerting an improper influence. *Id.* Moreover, where police interrogate a suspect in violation of *Miranda* and *Edwards,* "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991).

■■■ In determining whether a statement is voluntary, a trial court must consider the totality of the circumstances. *Medina,* 25 P.3d at 1222; *People v. Gennings,* 808 P.2d 839, 844 (Colo.1991). In reviewing the trial court's determination of a suppression motion, we defer to the court's findings of historical fact. *People v. Rivas,* 13 P.3d 315, 320 (Colo.2000). The court's application of legal standards to those facts, however, is an issue of law that we review de novo. *Id.*

Here, based on the evidence presented at a two-day hearing, the trial court determined that defendant's statements were voluntary and not the result of threats, coercion, or promises. The court based this conclusion on its findings that the interrogation at issue was not unduly long, the officers made no promises or threats to defendant, there was no display of weapons, and no coercive tactics were applied. In addition, the interrogation was "low key and calm and carried out in a conversational tone," and both officers testified that they believed defendant was trying to cooperate and that they treated him with respect and dignity. Finally, the court found several facts crucial to its determination:

(1) the Defendant said he was sure it was too late but hoped the information helped;
(2) the Defendant drew a map with the location of the victim's body and signed it;
(3) the Defendant stated that he just wanted to help, that he couldn't "run from this anymore."

The court noted that defendant had presented no evidence to counter the prosecution's evidence. Moreover, it appears undisputed that defendant reiterated his willingness to help the police find the victim's body even after he had had the opportunity to consult with counsel.

On this record, we perceive no error in the trial court's findings of fact or in its application of law to the facts presented. Although we do not condone the officers' interrogation in violation of defendant's rights under *Miranda* and *Edwards,* the record here demonstrates that defendant's statements were voluntary and not the result of coercion. For these reasons, evidence regarding the victim's body was properly admitted at trial. *See Patane,* 542 U.S. at 643–44, 124 S.Ct. at 2629–30; *Bradshaw,* 156 P.3d at 459–60; *Gosselin I.*

The trial court's order finding that defendant's statements were voluntary is affirmed, and the judgment of conviction stands affirmed.

Judge WEBB and Judge LOEB concur.