2012 CO 59

The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Suzanne Elizabeth GUTHRIE,
Defendant–Appellee.

No. 12SA80.

Supreme Court of Colorado,
En Banc.

Oct. 1, 2012.

Daniel H. May, District Attorney, Fourth Judicial District, Adam Bailey, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Earl W. Cook, Jr., Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the prosecution challenges an order of the El Paso County District Court granting defendant Suzanne Guthrie's motion to suppress evidence of an illegal narcotic discovered during a routine inventory search of her personal effects after a judge of the El Paso County Court, in a prior proceeding, ordered a deputy sheriff to jail her for direct contempt of court.[1]

¶ 2 In the present prosecution for Guthrie's possession of illegal drugs, the district court suppressed evidence discovered during the inventory search as an ad hoc remedy for the due process violation it deemed the county court judge to have committed when conducting the contempt proceeding pursuant to C.R.C.P. 407. We hold that no violation of the Fourth Amendment occurred here. The inventory search the police carried out resulted directly from the county court's order to the deputy sheriff, based on a finding of criminal contempt of court, to jail Guthrie. Appeal of the summary contempt conviction, which might or might not result in reversal, would be the proper recourse for the county court's alleged due process violation. Suppressing evidence of the illegal narcotic discovered as a result of the valid inventory search here would not be an appropriate remedy even if the county court erred in convicting Guthrie of direct contempt of court.

I.

¶ 3 In the prior proceeding in which the county court issued the contempt order, Guthrie came to the courthouse on a summons for Driving Under the Influence, section 42–4–1301, C.R.S. (2011). In the hallway outside the courtroom, the prosecution and defense worked out a plea agreement to that charge. Guthrie signed the plea agreement paperwork, and counsel obtained a sentencing date from the court clerk. Defense counsel then escorted Guthrie to the probation department to arrange an alcohol evaluation and left the courthouse.

¶ 4 A clerk smelled alcohol on Guthrie's breath while she was filling out paperwork in the probation department waiting area. Guthrie consented to a preliminary breath test that revealed her blood alcohol concentration to be .099. The probation office informed the county court of her elevated blood alcohol, and, in response, the judge directed a deputy sheriff to escort Guthrie into the courtroom. This was Guthrie's first appearance before the court that day.

¶ 5 Without defense counsel present, the county court judge summarily held Guthrie in contempt of court due to her intoxication and sentenced her to two days in jail. The judge ordered the deputy sheriff to arrest Guthrie. The deputy handcuffed her and

---

1. The prosecution phrased the issue as follows: "Did the district court err in applying the exclusionary rule to suppress the results of the search, which was conducted in good-faith reliance on the county court's order?"

escorted her to the booking area of the court-house. Pursuant to department policy, the deputy inventoried Guthrie's possessions prior to placing her in a holding cell. During the inventory search of her purse, the deputy discovered Oxycodone Hydrochloride. Guthrie lacked a prescription for the drug.[2] The prosecution subsequently charged Guthrie with felony Possession of a Controlled Substance—Schedule II, section 18–18–403.5, C.R.S. (2011), and Guthrie moved to suppress the evidence derived from the inventory search.

¶ 6 Following the suppression hearing, the district court determined that "[t]he Deputy who escorted the Defendant to the Courtroom and who subsequently did an inventory search following the contempt hearing acted in good faith and his actions were not violative of due process." Nonetheless, the district court suppressed evidence of the illegal narcotic gained from the inventory search.

¶ 7 The district court based its suppression order on the theory that suppression would remedy the due process violation it perceived the county court to have committed by summarily ordering Guthrie jailed for contempt of court. The district court reasoned that:

> the Judge in this case violated Defendant's right to due process. The Judge found Defendant in direct contempt for what clearly was not direct contempt. This error was compounded by sentencing the Defendant without her lawyer being present. The Record is devoid of any effort by the Judge to contact Defendant's lawyer who had been in the Courtroom earlier in the same case. The Judge acted as police, prosecutor, and Judge. The result is an abandonment of the traditional role of neutral judicial officer.... The Court finds [this] is a significant violation and not a technical violation. The Court finds this wrong requires a remedy. The Court finds the drugs discovered in Defendant's purse or on her person were fruits of the poisonous tree. The Court GRANTS the Motion to Suppress.

¶ 8 In this interlocutory appeal, the prosecution argues that the district court erred in suppressing the evidence derived from the inventory search. We agree.

## II.

¶ 9 We hold that no violation of the Fourth Amendment occurred here. The inventory search the police carried out resulted directly from the county court's order to the deputy sheriff, based on a finding of criminal contempt of court, to jail Guthrie. Appeal of the summary contempt conviction, which might or might not result in reversal, would be the proper recourse for the county court's alleged due process violation. Suppressing evidence of the illegal narcotic discovered as a result of the valid inventory search here would not be an appropriate remedy even if the county court erred in convicting Guthrie of direct contempt of court.

### A. Standard of Review

¶ 10 We review a trial court's suppression order with deference to that court's findings of historical fact and will not overturn those findings if they are supported by competent evidence in the record. *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo.2011). However, whether the trial court applied the correct legal standard in the case is a question of law we review de novo. *Id.* Our analysis is not constricted by only those facts that were the subject of the trial court's order; we also consider the undisputed facts evident in the record. *People v. Elmarr*, 181 P.3d 1157, 1161 (Colo.2008).

### B. Inventory Search Subsequent to a Summary Contempt Conviction

¶ 11 This case presents unusual circumstances. We have discovered only one analogous persuasive precedent regarding a summary court order of contempt followed by an inventory search. "[W]ithout reaching the issue of the legality of the contempt order," the Supreme Court of Vermont determined that evidence of contraband (marijuana and a switchblade) derived from an inventory search of the defendant incident to his incarceration for summary criminal contempt was

---

**2.** Oxycodone Hydrochloride is a Schedule II narcotic, section 18–18–204(2)(a)(I)(N), C.R.S. (2012), requiring a prescription, section 18–18–308(3), C.R.S. (2011).

not subject to suppression. *See State v. Robinson*, 165 Vt. 351, 683 A.2d 1005, 1006 (1996).

¶ 12 An inventory search made necessary by a summary contempt conviction presents a special circumstance due to the "unique nature of summary contempt." *Id.* at 1007. A court brings its contempt power to bear with the specific objective of maintaining the dignity, authority, and functionality of the court. *People v. Aleem*, 149 P.3d 765, 781 (Colo.2007). Because "[t]he charge and determination of guilt are collapsed into a single act, and the offended judge acts as victim, prosecutor, judge and jury ... [g]uilt is established in one fell swoop." *Robinson*, 683 A.2d at 1007. As a result, "the contemnor may challenge the grounds for the [contempt] order in a subsequent appeal, [but] the effect of the order, when made, is a finding of guilty and the imposition of a sentence." *Id.* Therefore an inventory search carried out subsequent to a summary contempt order "is analogous to a post-conviction inventory search prior to incarceration [and][e]vidence found during such an inventory search is not subject to suppression even if the conviction is ultimately overturned on appeal." *Id.*

¶ 13 The United States Constitution protects against unreasonable government searches and seizures. U.S. Const. amend. IV; *accord* Colo. Const. art. II, § 7. When police obtain evidence in violation of the Fourth Amendment, the exclusionary rule bars the prosecution from introducing that evidence against the aggrieved individual in either state or federal criminal contexts. *People v. Gutierrez*, 222 P.3d 925, 941 (Colo. 2009). The exclusionary rule is not a personal constitutional right but a judicially created remedy intended to enforce the prohibition against unreasonable search and seizure. *Id.* Therefore, courts reserve its application for those circumstances in which both an unreasonable search or seizure occurred and suppression would likely deter similar violations in the future. *Id.*

¶ 14 An "inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." *Illinois v. Lafayette*, 462 U.S. 640, 644, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Therefore, it implicates neither "[t]he policies behind the warrant requirement ... nor ... the related concept of probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), *reversing People v. Bertine*, 706 P.2d 411 (Colo.1985). An inventory search derives its reasonableness from serving a broad range of legitimate governmental interests that outweigh the intrusion on an individual's expectation of privacy. *People v. Inman*, 765 P.2d 577, 579 (Colo.1988) (citing *Lafayette*, 462 U.S. at 646, 103 S.Ct. 2605). These interests center on the "practical necessities of routine jail administration," *Lafayette*, 462 U.S. at 645, 103 S.Ct. 2605, and include: (1) protecting an arrestee's property while it remains in police custody, (2) preventing claims of lost or stolen property against the police, and (3) protecting the arrestee and others from the risk that a dangerous instrumentality or substance might be concealed in an innocent looking article. *Inman*, 765 P.2d at 579 (citing *Lafayette*, 462 U.S. at 646, 103 S.Ct. 2605). Therefore, routine searches of a defendant's person and effects prior to entering jail do not violate the Fourth Amendment.[3]

---

**3.** *See, e.g., Florence v. Bd. of Chosen Freeholders of Burlington*, ___ U.S. ___, 132 S.Ct. 1510, 1513, 1514, 1523, 182 L.Ed.2d 566 (2012) (confirming the constitutionality of a routine "strip search" involving visual inspection of the body orifices before a detainee arrested during a traffic stop on an outstanding bench warrant entered the general jail population because "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies"); *Lafayette*, 462 U.S. at 648, 103 S.Ct. 2605; *Bell v. Wolfish*, 441 U.S. 520, 558–59, 99 S.Ct.

1861, 60 L.Ed.2d 447 (1979) (holding constitutional the strip search/visual body cavity inspection of pre-trial detainees before they reenter the general jail population after a contact visit); *Bame v. Dillard*, 637 F.3d 380, 388 (D.C.Cir. 2011) (finding "no clearly established constitutional prohibition of strip searching arrestees without individualized, reasonable suspicion" before jailing); *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 982 (9th Cir.2010) (holding sheriff's department policy "requiring strip searches of all arrestees classified for custodial housing in the general population" to be "facially reasonable"); *Powell v. Barrett*, 541

¶ 15 An inventory search incident to incarcerating a lawfully arrested person is valid where officers conducted the search according to "standardized procedures,"[4] without acting "in bad faith or for the sole purpose of investigation." *Bertine*, 479 U.S. at 372, 107 S.Ct. 738. In this context, "[e]xamining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." *Lafayette*, 462 U.S. at 646, 103 S.Ct. 2605; *Inman*, 765 P.2d at 579. This includes searching within "any container or article" in an arrestee's possession. *Lafayette*, 462 U.S. at 648, 103 S.Ct. 2605.

¶ 16 In *Lafayette*, the United States Supreme Court addressed the reasonableness of a police search of an arrestee's personal effects pursuant to "routine administrative procedure ... incident to booking and jailing" the arrestee. *Id.* at 643, 103 S.Ct. 2605. In that case, a police officer arrested Ralph Lafayette for disturbing the peace after his involvement in an altercation with a theater manager. *Id.* at 641, 103 S.Ct. 2605. In the booking room of the police station, the officer removed Lafayette's handcuffs and directed him to place his pocket contents on the counter. *Id.* at 641–42, 103 S.Ct. 2605. Lafayette followed this instruction, then placed his shoulder bag on the counter. *Id.* at 642, 103 S.Ct. 2605. When the officer emptied the bag, he discovered ten amphetamine pills contained within a cigarette package which led to charges against Lafayette under the Illinois Controlled Substances Act. *Id.* At a pre-trial suppression hearing, the officer "testified that he examined the bag's contents because [, even though the bag was small enough that it could have been placed in a container for protective purposes instead of being searched,] it was standard procedure to inventory 'everything' in the possession of an arrested person." *Id.* The trial court ordered the amphetamine pills suppressed, the Illinois Appellate Court affirmed the trial court's decision, and the state supreme court refused review. *Id.* at 642–43, 103 S.Ct. 2605. "[B]ecause of the frequency with which this question confronts police and courts," the United States Supreme Court granted certiorari. *Id.* at 643, 103 S.Ct. 2605. Analogizing to the circumstances of *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), which involved an inventory search of an abandoned vehicle impounded by the police, the Court held the search of Lafayette's bag and the cigarette package found within it constitutional because it was "not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. 2605.

¶ 17 We came to the same conclusion five years later in *People v. Inman*, where police conducted an inventory search of the contents of Patricia Inman's purse as part of the routine booking procedure at the county jail. 765 P.2d at 578, 581. Inside a half-dollar-sized brown paper packet found within a small cosmetic bag stored in the main compartment of the purse, officers discovered a white powdery substance later determined to be cocaine. *Id.* at 578. Although the district court found the arrest and the inventory search of the purse to be valid, it granted Inman's motion to suppress the cocaine, because the officers had no reason to suspect that the paper packet contained contraband. *Id.* We reversed the suppression order, quoting *Lafayette* for the proposition that "[e]ven if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine

F.3d 1298, 1314 (11th Cir.2008) (concluding that the rights of "arrestees being booked into a jail ... are not violated by a policy or practice of strip searching ... as part of the booking process"); *People v. Salaz*, 953 P.2d 1275, 1276, 1278 (Colo.1998) (holding a second search of a prisoner's property, initially inventoried without a warrant "pursuant to the jail's written rules and regulations," constitutional because the prisoner "had no expectation of privacy in his clothing while it was in the custody of jailers"); *Inman*, 765 P.2d at 581.

4. Standard department procedures should regulate an officer's discretion in conducting inventory searches. *People v. Hauseman*, 900 P.2d 74, 77 (Colo.1995).

and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit."[5] *Id.* at 580 (quoting *Lafayette*, 462 U.S. at 648, 103 S.Ct. 2605).

### C. Application to This Case

¶ 18 In this case, the district court acknowledged that "[t]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges" and unequivocally concluded that the deputy sheriff carried out his duties in good faith and without violating Guthrie's right to due process. Yet, the district court suppressed evidence derived from the valid inventory search as an ad hoc remedy for what it perceived to be a due process violation by the county court. We conclude that the district court applied the wrong legal standard to the facts of this case.

¶ 19 An inventory search carried out subsequent to a summary contempt order "is analogous to a post-conviction inventory search prior to incarceration." *Robinson*, 683 A.2d at 1007. Based upon the record, we determine that no violation of the Fourth Amendment triggering application of the exclusionary rule occurred here. Instead of invoking concerns over the presence or absence of probable cause and officer misconduct in procuring, executing, or avoiding a search or arrest warrant—the standard context in which courts consider applying the exclusionary rule—the record in this case

demonstrates only that the deputy sheriff carried out the county court's order to jail Guthrie for direct contempt of court. The deputy sheriff had no option but to comply with the county court judge's order. The routine inventory search that resulted was consistent with the legitimate government interests of protecting an arrestee's property, preventing unfounded claims against the department for lost items, and minimizing the risk of dangerous or contraband items entering the jail environment.

 ¶ 20 The county court's summary contempt conviction of Guthrie was reviewable for abuse of discretion by the district court on appeal.[6] However, suppression of the evidence in this criminal prosecution for possession of an illegal narcotic found during a valid inventory search is not a proper remedy for the county court's alleged due process violation.

### III.

¶ 21 Accordingly, we reverse the district court's suppression order and return this case for further proceedings consistent with this opinion.

---

**5.** *Lafayette* emphasized that "[i]t is immaterial whether the police actually fear any particular package or container" since "the need to protect against such risks arises independent of a particular officer's subjective concerns." 462 U.S. at 646, 103 S.Ct. 2605.

**6.** The county court, pursuant to C.R.C.P. 407(a)(2) and (d), held Guthrie in criminal contempt of court. Criminal contempt proceedings

are designed to preserve the power and vindicate the dignity of the court by imposing punishment on the contemnor. *People v. Razatos*, 699 P.2d 970, 974 (Colo.1985). Our original jurisdiction is an appropriate means to review summary contempt orders. *People v. Aleem*, 149 P.3d 765, 771 (Colo.2007). Therefore, Guthrie might have successfully prevented execution of her sentence by petitioning this court for a rule to show cause.